Defendant, the State Board of Health, appeals from a declaratory judgment in favor or plaintiff, the Greater Birmingham Association of Home Builders. We affirm.
This controversy concerns the legislatively-created scheme of authority regarding the approval of on-site wastewater disposal systems planned for construction in Jefferson County subdivisions. In the words of the trial court, the principal issue is:
 [W]hether real estate subdivisions in Jefferson County and their plans and specifications for on site sewage collection, treatment and disposal systems and water supplies must be subject to final approval by the State Board of Health through its Health Officer and employees or whether such subdivisions and their sewage plans may be considered for final approval by the Jefferson County Board of Health acting through its Health Officer and employees.
Resolution of the issue presented depends upon the proper construction to be placed upon Code 1975, § 22-26-3 and Section 6 of Act No. 659 of the 1978 Regular Session of the Legislature. Section 22-26-3 provides:
 All plans and specifications applying to sewage collection, treatment and disposal shall be first submitted to the state board of health and/or county boards of health for approval before construction. The said plans and specifications shall be approved if in conformance with said specifications, rules and regulations and the required permits for construction issued by the state board of health or its duly authorized agents or employees. No person, firm, corporation or municipal corporation shall begin construction without said approval, and a violation of this section shall constitute a misdemeanor, punishable, on conviction, by a fine of not to exceed $500.00.
Section 6 of Act No. 659 reads:
 Every person proposing to develop a subdivision in Jefferson County shall submit, in the manner prescribed by the Jefferson County Board of Health, all plans and specifications applying to sewage collection, treatment and disposal, and water supply for approval before construction begins and before said subdivision is recorded in the Office of the Probate Judge. The said plans and specifications shall be approved if in conformance with said rules and regulations of the Jefferson County Board of Health.
Our focus is upon the changes effected, if any, by Act 659 upon the procedure necessary to obtain approval of on-site sewage disposal systems planned for Jefferson County subdivisions.
The evidence taken at trial indicates that prior to May of 1978 proposed subdivisions in Jefferson County with plans for on-site *Page 1060 
waste treatment systems (e.g., septic tanks) were submitted by developers to the County Board of Health for approval before recordation. Upon receipt of a particular subdivision application and other necessary information, the County Board would make an extensive field investigation of soil conditions and percolation in the area. If the County Board approved the subdivision, the plans and the County Board's recommendations and approval would be forwarded to the State Board of Health for its concurrence. If the State Board agreed with the County Board, the subdivision could then be recorded in the Jefferson County Probate Court. It appears that up until May, 1978, the same general procedure was followed by the pertinent agencies when approval was sought as a prerequisite to the actual construction and installation of waste treatment systems on a particular lot in a subdivision.
In May of 1978, the Jefferson County Board of Health was informed by the State Board that, pursuant to Act No. 659 of the 1978 Regular Session of the Legislature, the County Board was authorized to accept sole jurisdiction over the approval of proposed on-site wastewater disposal systems in Jefferson County. For four months thereafter, the County Board exercised that authority, as it no longer forwarded its approval of particular subdivisions to the State Board. In August of 1978, however, on the basis of an opinion by the Attorney General, the State Board of Health instructed the Jefferson County Board to revert to its prior practice of sending subdivision plans to the State Board for review and approval or rejection. When the Jefferson County Board of Health complied with the State's order and resumed its former practice of securing the State Board's approval of subdivisions before recordation and construction, the Greater Birmingham Association of Home Builders filed a bill for declaratory judgment against both health agencies and their health officers, seeking a judicial determination that Act No. 659 gave the County Board of Health and Health Officer "sole and exclusive jurisdiction over the approval of plans and specifications applying to sewage collection, treatment and disposal in connection with applications for subdivision plats for recordation in the Office of the Judge of Probate of Jefferson County, Alabama." After a hearing on the dispute, the trial court entered a judgment in favor of plaintiff, and defendant appealed.
In its final order, the trial court first ruled that the provisions of Title 22, Chapter 26 of the 1975 Code had no application when a subdivision plat is merely proposed forrecordation in a particular county; instead, the provisions of Title 22, Chapter 26 — principally § 22-26-3 — became operative only when waste treatment systems were actually to beconstructed or installed. Because the authority to approve plans and specifications for on-site sewage disposal systems before construction is granted ambiguously, the trial court then turned its attention to other provisions of Title 22 to resolve the ambiguity. The court found that the overall statutory scheme of health regulation gives the County Health Officer sole authority over all sanitary work within the county, but that the County Health Officer's authority is to be exercised under the overall direction of the State Health Officer and the County Board of Health. See Code 1975, §22-3-4. The trial court also concluded that the County Health Officer's authority over the approval of waste treatment systems at the construction stage was to be exercised in conformity with the rules and regulations of the State Board of Health (see Code 1975, § 22-26-3), under the supervision and control of that body. See Code 1975, § 22-2-2. Finally, the trial court held Act No. 659 to be a valid and constitutional enactment, and ruled that the Act granting authority to the County Board over the approval of on-site sewage collection and disposal systems as a prerequisite to recordation, construed inpari materia with other statutory requirements, mandates that the County Board's authority be exercised under the general supervision of the State Board and in accord with rules and regulations established by the State Board. *Page 1061 
On this appeal, the State Board contends that the trial court's interpretation of the pertinent statutes, if correct, leads to the conclusion that Act No. 659 is unconstitutional under Section 105 of the Alabama Constitution of 1901 as a local law which purports to address subject matter previously "provided for" by a general law. After having exhaustively examined the record, the arguments of the parties, and the applicable statutes, we have concluded that the trial court did not err in its construction of the statutes; indeed, in view of the number of statutes which have some bearing on the question of the authority of the State Board of Health vis-a-vis that granted to the respective county boards, we feel that the trial court is to be commended for its effort.
Before turning to the constitutional issue posed in this case, it is appropriate to reiterate the fundamental proposition that validly enacted legislation is presumed to be constitutional. As we stated in Mobile Housing Board v. Cross,285 Ala. 94, 97, 229 So.2d 485, 487 (1969):
 Every presumption is in favor of the constitutionality of an act of the legislature and this court will not declare it invalid unless in its judgment, the act clearly and unmistakably comes within the inhibition of the constitution.
We will not invalidate a statute on constitutional grounds if by reasonable construction it can be given a field of operation within constitutionally imposed limitations. See Ex parteHuguley Water System, 282 Ala. 633, 213 So.2d 799 (1968).
Bearing in mind the principles enunciated above, we direct our attention to the question whether Section 6 of Act No. 659 violates Section 105 of the State Constitution. That is, did any existing general law subsume the subject matter addressed in Section 6 of Act No. 659? We hold that Section 6 of the Act may reasonably be interpreted to have a field of operation within the limits of Section 105 of the Constitution because the subject matter addressed in Section 6 was not previously "provided for" by a general law. Accordingly, the trial court's conclusion that the Act "is a valid and constitutional enactment of the Legislature" is due to be affirmed.
The State Board asserts that the approval procedure dealt with in Section 6 of Act No. 659 was previously addressed by a general law, Code 1975, § 22-26-3 and that, as a result, the 1978 Act is unconstitutional. We disagree, however, for the use of imprecise language in § 22-26-3 makes it unclear exactly what the statute was intended to provide for, other than the submission of waste treatment plans to some health board. The first sentence of § 22-26-3 requires that plans and specifications for proposed waste treatment and disposal systems be "first submitted to the state board of health and/or
county boards of health for approval before construction." (Emphasis added.) Although it is clear that sewage disposal plans must "first be submitted" to one or the other of the specified agencies, it is unclear to which agency the plans should be submitted due to the Legislature's employment of the term "and/or."
The use of the phrase "and/or" invariably engenders confusion, as it has in this case. Employment of the term finds little support in the authorities on legislative drafting. See,e.g., Sands, 1A Sutherland Statutory Construction, § 21.14 (1972). As Mr. Justice Bloodworth pointed out in his concurring opinion in Air Engineers, Inc. v. Reese, 283 Ala. 355,217 So.2d 66 (1969), the use of "and/or" has been held to be "equivocal, uncertain, and indefinite." Justice Bloodworth also noted this Court's opinion in Hays v. McCarty, 239 Ala. 400,195 So. 241 (1940), wherein the Court "found the meaning of these words to be in the disjunctive, that the words `and/or' mean either and or or." 283 Ala. at 363, 217 So.2d 75. Like Justice Bloodworth, we have concluded that the term should be interpreted to mean the disjunctive. Therefore, the general law in this case, Code 1975, § 22-26-3, merely requires that plans for proposed sewage treatment systems be submitted either to the State Board of Health or to the particular county health board, if one exists. Since that is the case, it cannot be said that any *Page 1062 
specific approval process in this area has been "provided for" by the general law. The inevitable conclusion is that a local law, such as Act No. 659, which does specify a process for approval of waste treatment plans, does not violate Section 105 of the State Constitution.
It is also noteworthy that Section 6 of Act No. 659 addresses a subject that has not even arguably been addressed by the general law — the approval or disapproval of a general waste treatment system for a subdivision as a prerequisite for the recordation of the subdivision plat in the office of the county probate judge. The record reflects several conditions in Jefferson County which create the need for special attention by the County Board of Health early in the planning stages of residential subdivision development. The existence of conditions such as Jefferson County's moratorium on connections to existing off-site sewage treatment plants and the shortage of building sites in the county suitable for conventional on-site waste treatment facilities necessitates close cooperation between developers in the county and the County Board of Health. The Legislature's focus in Section 6 of Act No. 659 upon the initial subdividing of land in Jefferson County is thus not impermissible under Section 105 of the Constitution, for as we pointed out in Peddycoart v. City ofBirmingham, 354 So.2d 808, 815 (Ala. 1978):
 [L]ocal legislation reflecting responses to local needs may be enacted. It is only when those local needs already have been responded to by general legislation that Section 105 of our State Constitution prohibits special treatment by local law.
Because Section 6 of Act No. 659 represents the Legislature's response to demonstrated local needs of Jefferson County which had not previously been addressed by the general law, we find no constitutional infirmity in the Act. Our decision on the constitutional issue is dispositive of this entire case and so we pretermit discussion of the various procedural issues raised by the parties. The decree of the trial court is due to be, and is hereby, affirmed.
AFFIRMED.
TORBERT, C.J., and MADDOX, JONES and SHORES, JJ., concur.