551 So.2d 357 (1989)
CITY OF BIRMINGHAM, a municipal corporation
v.
Michael G. GRAFFEO.
88-1525.
Supreme Court of Alabama.
September 19, 1989.
*358 Donald V. Watkins and Joe R. Whatley, Jr. of Cooper, Mitch, Crawford, Kuykendall & Whatley, Birmingham, for appellant.
J. Scott Greene of Bishop, Colvin & Johnson, Birmingham, for appellee.
PER CURIAM.
The issue presented by this appeal is whether the City of Birmingham, acting pursuant to Ala.Code 1975, § 11-43-63, was authorized to enact Ordinance No. 89-46, which effectively removed Michael G. Graffeo, an elected City Council member, from office before the end of his elected term. The trial court answered this issue in the negative. Because of the reasons set forth below, we hold that the trial court erred in granting the injunctive relief.

Facts
In the October 1987 municipal election, Michael G. Graffeo was elected as a Birmingham City Council member. At the time Graffeo was elected to his four year-term, the election of members to the Birmingham City Council, (hereinafter "the City Council") was governed by the Mayor-Council Act of 1955, Ala. Acts 1955, No. 452. The Mayor-Council Act established a system for election of nine at-large city council members with a staggered election system. In October of every odd numbered year, five members of the council were elected.
Under the then existing Mayor-Council Act, the four candidates with the largest number of votes in the election served four year terms. The candidate with the fifth greatest number of votes was elected to a two-year term. In the October 1987 election, David Herring, William Bell, Jeff Germany and Graffeo were the four candidates with the largest number of votes and, thus, were elected to serve four year terms.
After the election in 1987, a group of qualified voters commenced an action in federal court challenging the City of Birmingham's (hereinafter the "City") at-large system of election of city council members. That case, Slaughter v. City of Birmingham, CV 87-PT-1947-S alleged that the at-large system violated the United States Constitution and the federal Voting Rights Act because it discriminated against the white citizens of the City.
In 1987, the Alabama legislature adopted Ala.Code, 1975 § 11-43-63 which authorized municipalities to establish single-member districts for the election of council members. Section 11-43-63 provides:
"Any city or town council of this state not currently electing its members from single-member districts pursuant to state law may, not less than six months prior to the regular general municipal election, by ordinance adopted by a majority of the membership of the council, divide the municipality into single-member districts (wards) of not less than five nor more than seven districts (wards). Provided, however, that the number of districts (wards) in any Class 1, 2 or 3 municipality may not exceed nine districts (wards). Such ordinance shall be considered only after two weeks public notice has been given, outlining generally the voting districts under consideration. The ordinance shall provide that candidate for election for a place on the council, where the council has been divided into districts, shall reside within the boundaries of said district (ward) for which he or she seeks election, and shall continue to reside in the district he or she represents so long as he or she remains a member of said council and further that candidates for election to a place on the council shall have resided within the district from which he or she seeks election for a period of 90 days immediately preceding *359 the date of the election. Only electors residing within a district shall be entitled to vote for candidates seeking election for said district.
"The ordinance establishing the districts shall describe the territory composing the district by metes and counts, or census tracts, and the municipal clerk, within five days after the adoption of the ordinance, shall file with the judge of probate of the county or counties in which the municipality lies a certified copy of such ordinance accompanied, by a map or plat of the city or town, showing the boundaries of all such districts."
In March of 1989, pursuant to § 11-43-63, the Mayor proposed Ordinance No. 89-46. Graffeo was present at a public hearing and voiced his opposition to the proposed ordinance. On March 28, 1989, the ordinance was adopted by a majority of the city council. Graffeo and David Herring voted in opposition to the ordinance. William Bell and Jeff Germany, who, like Graffeo were serving four year terms, voted in favor of the ordinance.
After adoption of the ordinance providing for single member districts for election of council members, the City submitted the ordinance to the United States Justice Department for preclearance under Section 5 of the Voting Rights Act. Graffeo informed the Justice Department of his contention that the ordinance unconstitutionally shortened his term of office. On June 23, 1989, the Justice Department precleared Ordinance No. 89-46, and the City proceeded to implement the new system for election of city council members. The election pursuant to Ordinance No. 89-46 is scheduled for October 10, 1989.
On June 26, 1989, three days after the preclearance, the City moved to dismiss the Slaughter v. City of Birmingham case in federal court as being moot. On July 31, 1989, the federal court granted the City's motion. An amended complaint was later filed primarily challenging the ordinance's allocation of districts as illegally diluting white voting strength. The court then rescinded its order declaring the suit moot.
On August 1, 1989, Graffeo filed a complaint seeking an injunction; it sought a temporary restraining order, a preliminary injunction and a permanent injunction. In addition, Graffeo also filed motions to waive security and to consolidate the preliminary injunction and the permanent injunction.
On August 2, 1989, the trial court heard Graffeo's request for a temporary restraining order. The trial court expressed concerns about its ability to assume jurisdiction of Graffeo's case due to the pending action in federal court. Pursuant to the trial court's order, Graffeo petitioned the federal court for intervention, but asked that the intervention be denied because his case was based primarily upon state law. The federal court denied Graffeo's petition for intervention.
On August 16, 1989, the trial court ruled that the City could not present evidence on its federal constitutional and pre-emption defenses. On August 31, 1989, a trial was held on the merits of the injunctive relief, based in large part on detailed stipulations by the parties.
On September 6, 1989, the trial court entered its final judgment granting Graffeo's requested injunctive relief. The trial court's order held, in part, as follows:
"ONE: The Plaintiff has standing to maintain this action.
"TWO: The Plaintiff is not barred by laches from bringing this action.
"THREE: The City Council may not reduce, cut-short or terminate the terms of any of its members and to the extent that Ordinance 89-46 attempts to accomplish that result it is unenforceable.
"FOUR: The City Council may not abolish itself or the office of any city council member.
"FIVE: The City Council may not by passage of an ordinance amend a state statute and thus Ordinance 89-46 may not be construed to amend the Mayor-Council Act or change the terms of city council members which are set out in the Mayor-Council Act.
"SIX: Section 11-43-63 may not be interpreted so as to authorize the removal of *360 a city council member from office prior to the expiration of such member's term.
"SEVEN: Section 11-43-63 does not amend the Mayor-Council Act so as to authorize the City Council to abolish itself or the office of any city council member.
"EIGHT: Section 11-43-63 does not amend the Mayor-Council Act so as to authorize the City Council to change the term of office of any city council member.
"NINE: To the extent that there is a conflict in the provisions of the Mayor-Council Act and Section 11-43-63, the provisions of the Mayor-Council Act control because they are specific provisions whereas the provisions of 11-43-63 are general provisions.
"TEN: The City of Birmingham is enjoined from implementing the provisions of Ordinance 89-46 calling for an election of council members from single-member districts on October 10, 1989.
"ELEVEN: The costs of this action are taxed to the defendants."
On September 8, 1989, we granted a motion to expedite the appeal and stayed that portion of the trial court's order that prohibited the City of Birmingham from preparing for the October 10, 1989 election.

I.
The City argues that the trial court erred when it held that § 11-43-63 did not amend the Mayor-Council Act, and that the trial court erred when it held that the provisions of the Mayor-Council Act were specific provisions that controlled the general provisions of § 11-43-63. If, as the City argues, § 11-43-63 amended the Mayor-Council Act, then the trial court's ruling concerning whether the provisions of the two acts were specific or general was error, because those provisions that the trial court relied on will have been amended.
The Mayor-Council Act, Ala. Acts 1955, No. 452 authorized the City to establish the office of at-large council members. That office was not established until the City voted to change the form of government. Connor v. State, 275 Ala. 230, 153 So.2d 787 (1963); Reid v. City of Birmingham, 274 Ala. 629, 150 So.2d 735 (1963). The office of at-large council members resulted, accordingly, from the City's exercise of the option given the City by the legislature to create the office.
Thirty-two years after the Legislature passed the Mayor-Council Act, it passed § 11-43-63, which authorizes municipalities to establish single member districts for the election of council members. The legislature has the inherent power to prescribe, alter and change the form of municipal governments. Seigelman v. Folmar, 432 So.2d 1246 (Ala.1983); Opinion of the Justices, 277 Ala. 630, 173 So.2d 793 (Ala.1965). A municipality may exercise those powers that are explicitly granted to it by the legislature, as well as those powers that are necessarily implied from an express grant of power. Spear v. Ward, 199 Ala. 105, 74 So. 27 (1917). Section 11-43-63 grants municipalities the power to divide the municipality into single member districts upon a vote of the city council. Accordingly, § 11-43-63, on its face, allows the City to pass an ordinance such as Ordinance No. 89-46, which changes the office of the city council from being elected at-large to being elected in single member districts.
The trial court's holding was to the effect that § 3.10 of the Mayor-Council Act was not amended by § 11-43-63 and that § 3.10 prohibits the City from using § 11-43-63 to enable it to sustain Ordinance No. 89-46. Section 3.10 of the Mayor-Council Act provides:
"Sec. 3.10. Creation of new departments or offices; change of duties.
"The council by ordinance may create, change, and abolish offices, departments or agencies, other than the offices, departments and agencies established by this act. The council by ordinance may assign additional functions or duties to offices, departments or agencies established by this act, but may not discontinue or assign to any other office, department or agency any function or duty assigned by this act to a particular office, department or agency."
*361 Section 11-43-63 explicitly allows a city, by the vote of its city council, to change from the at-large election of city council members to election in single-member districts. That provision was enacted thirty-two years after § 3.10 of the Mayor-Council Act was enacted, which, to some extent, indicates that § 11-43-63 was intended to modify the provisions of § 3.10. Moreover, the trial court's holding that 11-43-63 did not amend the Mayor-Council Act and, accordingly did not amend § 3.10, destroys, at a practical level, any possible effectiveness of § 11-43-63.
Using the trial court's analysis, § 3.10 would forever be a bar to the City passing an ordinance pursuant to § 11-43-63. Why would the Legislature enact § 11-43-63, if it did not mean for the provision to have any effect? Even Graffeo himself concedes that if Ordinance No. 89-46 had been made effective for the 1991 city council elections, then he would have no basis to sustain an action to enjoin the effects of the ordinance. Accordingly, considering our entire discussion, we hold that the trial court erred when it held that § 11-43-63 did not amend the Mayor-Council Act.
The trial court further held that even if the provisions of the Mayor-Council Act did not prohibit the City from passing Ordinance 89-46 pursuant to § 11-43-63, implementing the ordinance would shorten Graffeo's term, and such a reduction in his term is not authorized by § 11-43-63 and is prohibited by Article VII, § 175 of the Constitution of Alabama.
In regard to the trial court's holding that § 11-43-63 would not authorize the council to enact an ordinance that shortened Graffeo's term, we have held that where the subject of a statute is expressed in general terms, everything which is necessary to make a complete enactment in regard to it is included in and authorized by it. Ala. Const.1901, Article 4, § 45, as interpreted in England v. State, 240 Ala. 76, 197 So. 365 (1940). Furthermore, generally, that which is clearly implied from the express terms of the statute is as much a part of the statute as that which was expressly stated. Weill v. State, 250 Ala. 328, 34 So.2d 132 (1948).
The staggered system of council member elections in Birmingham was established by a 1955 legislative act and a subsequent 1963 referendum by the citizens of Birmingham. Accordingly, the Legislature should have been aware of the staggered terms of office of the members of the city council at the time of the enactment of § 11-43-63. The provisions of the statute provide that a member of the council cannot hold office unless he resides in the district that he represents.[1] No provision or exception was made for the continued term of office for those council members who did not reside in the district from which they are elected. The grant of power to alter the system of election of the city council necessarily involves the possibility that there may be a different city council elected. Because the city council itself decides whether to adopt an ordinance pursuant to 11-43-63 that changes the elections from at-large to single-member district elections, the city council is in the position to determine for itself whether to risk the possibility that a different city council might be elected if there is a change in the method of election. The express language of the statute cannot be followed without the possibility of curtailing the term of office of some council members. We hold, accordingly, that the power to curtail Graffeo's term is implied from the grant of power to alter the form of government.
The trial court held that § 11-43-63 was unconstitutional and thus, unenforceable, because it violated Article VII, § 175 of the Alabama Constitution when that provision is read in connection with Article VII, § 173 and Article IV, §§ 60, 89 of the Alabama Constitution. The trial court explained that holding by stating that 11-43-63 "provided a means to remove a council member from his office during his term" by means other than § 175, the exclusive way to remove an officer during his term. Undeniably, the legislature *362 cannot enact a statute that conflicts with the Constitution, that is, that prohibits that which is permitted by the Constitution or that permits that which is prohibited by the Constitution. Ala. Const.1901, Article IV, § 89; City of Birmingham v. West, 236 Ala. 434, 183 So. 421 (1938).
Before we discuss that holding, we note that there is no provision of the Alabama Constitution that limits the power of the legislature to grant to municipalities the right to select the form of government that a municipality may choose.
When first considered, the cases cited by the trial court and by Graffeo seem to support the trial court's holding. Close inspection reveals that the cases they cite address factual situations where various attempts were made to remove officers covered by § 175 by means other than those outlined in the Constitution.
Roberts v. Fredrick, 295 Ala. 281, 328 So.2d 277 (1976), involved an attempt by the mayor of a city to force the resignation of a housing commissioner, who was an officer protected by § 175, without resort to the proper proceedings. Likewise, Day v. Andrews, 279 Ala. 563, 188 So.2d 523 (1966), involved another mayor's attempt to force the resignation of an officer protected by § 175 without resort to the proper proceedings.
In Bradford v. State, 226 Ala. 342, 147 So. 182 (1933), the court held that an incumbent city attorney, elected to a four-year term pursuant to a state statute, could remain in office for the duration of his term in spite of the election of another city attorney pursuant to another applicable state statute. The court, thus, again addressed whether an executive officer or executive body can remove an officer from office without use of impeachment proceedings. Similarly, in Nolen v. State, 118 Ala. 154, 24 So. 251 (Ala.1898), the governor suspended a county tax assessor from office prior to the end of his term pursuant to a general statute passed by the legislature. The Supreme Court held that the tax assessor could not be removed from office because he was protected by § 175.
None of these cases construe legislative enactments or discuss the curtailing of the term of the office itself. Each deals with the removal of a specific individual and the continuation of the office unaltered with a new incumbent.
Owens v. City Council of Troy, 229 Ala. 439, 157 So. 865 (1934), involved the president of Troy's city council, who was removed from office prior to the end of his four year term. The Court addressed the statute that he was removed under, noted that it allowed the impeachment of the president without a trial by jury, and held that the section that provided for his impeachment was invalid.
In Williams v. State, 197 Ala. 40, 72 So. 330 (1916), the Court addressed a statute which provided for removal of municipal officers by a recall vote. Williams, discussed in detail in the trial court's order, addressed the question of the ability of the Legislature to provide for additional methods for the removal of an officer other than impeachment. The case did not address the question of the ability of the Legislature to alter or amend the term of office or officers referred to in § 175.
Both Owens and Wiliams, supra, addressed legislative power in relation to § 175. Neither addressed the question of the ability of the legislature to alter or amend, by legislative action, the term of office of officers protected by § 175. Like the other cases cited by the trial court and by Graffeo, they dealt with the question of the removal of the officer and not with legislative changes in the office.[2]
The actions of the city council and Ordinance No. 89-46 do not violate the prohibitions against removal except by impeachment contained in § 175 of the Alabama *363 Constitution. That prohibition is a limitation on the power of the legislature and municipalities to remove officers without impeachment, but it does not limit the power of the legislature to change an office that the legislature itself created. State v. Hester, 260 Ala. 566, 72 So.2d 61, 65 (1954). In Hester, the court stated:
"[A]ll legislative power resides with the general assembly except wherein it is forbidden by the Constitution to be exercised, and with the legislature rests the creation of public offices not created by the constitution, which are deemed to be for the public good in the administration of the affairs of the state, and to abolish them at pleasure. In the absence of express inhibition in the constitution, the power of the legislature in this respect is supreme."
72 So.2d at 65 (quoting Hawkins v. Roberts & Son, 122 Ala. 130, 27 So. 327 (1899)).
The standard of review in determining the constitutionality of a statute was stated in State Board of Health v. Greater Birmingham Ass'n of Home Builders, Inc., 384 So.2d 1058, 1061 (1980):
"Before turning to the constitutional issue posed in this case, it is appropriate to reiterate the fundamental proposition that validly enacted legislation is presumed to be constitutional. As we stated in Mobile Housing Board v. Cross, 285 Ala. 94, 97, 229 So.2d 485, 487 (1969):
"`Every presumption is in favor of the constitutionality of an act of the legislature and this court will not declare it invalid unless in its judgment, the act clearly and unmistakably comes within the inhibition of the Constitution.'
"We will not invalidate a statute on constitutional grounds if by reasonable construction it can be given a field of operation within constitutionally imposed limitations. See Ex Parte Huguley Water System, 282 Ala. 633, 213 So.2d 799 (1968)."
And in Home Indemnity Co. v. Anders, 459 So.2d 836, 840 (Ala.1984):
"In determining whether the act is constitutional, we are bound by the following presumption:
"`[I]n passing upon the constitutionality of a legislative act, the courts uniformly approach the question with every presumption and intendment in favor of its validity, and seek to sustain rather than strike down the enactment of a coordinate branch of the government. All these principles are embraced in the simple statement that it is the recognized duty of the court to sustain the act unless it is clear beyond the reasonable doubt that it is violative of a fundamental law.'
Alabama State Federation of Labor v. McAdory, 246 Ala. 1, 9, 18 So.2d 810, 815 (1944)."
See also 2A Sands, Sutherland Stat. Const. § 45.11 (1984).
The holding of the trial court that § 11-43-63 violates the Alabama Constitution and is, accordingly, unenforceable, is error.
For the sake of clarification, we summarize our major holdings thus far. The trial court erred when it held that § 11-43-63 did not amend the provisions of the Mayor-Council Act. The trial court erred when it held that the provisions of the Mayor-Council Act controlled the provisions of § 11-43-63. The trial court also erred when it held that 11-43-63 violated the Alabama Constitution.

II.
Although some courts have referred to a public office as a species of property, the decisions generally are to the effect that no one has any private right of property in such office. Higginbotham v. Baton Rouge, 306 U.S. 535, 59 S.Ct. 705, 83 L.Ed. 968 (1939). 63A Am.Jur.2d Public Officers and Employees, § 8 (1984). The fact that the Constitution throws a mantle of protection around a public officer, such as a limitation on the power of the legislature to abolish the office, that does not change the character of the office or make it property. Taylor v. Beckham, 178 U.S. 548, 20 S.Ct. 890, 900, 44 L.Ed. 1187 (1900); see also Article VII, § 175, Alabama Constitution of 1901.
*364 This Court has continually held that "a public office which the legislature creates is not the property of the office holder within the constitutional provision against depriving a man of property, nor does it ever become a vested right as against the right of the state to remove him." Moore v. Watson, 429 So.2d 1036 (Ala.1983) (emphasis added). See also Simpson v. Van Ryzin, 289 Ala. 22, 265 So.2d 569 (1972); Heck v. Hall, 238 Ala. 274, 190 So. 280 (1939).
It is well settled that the legislature may abolish an office and thereby cut short the term of an officer. The trial court held that these cases dealt with acts of the legislature and not acts of a city council. While this may be true, its application to the facts in this case is misplaced. When the city council adopted and implemented Ordinance No. 89-46, it did so by express authority granted by the legislature in § 11-43-63.
Because we have held that Graffeo did not have a property right in his office, injunctive relief was not proper in this case. Therefore, the trial court erred in granting injunctive relief.
The judgment is due to be, and it hereby is reversed and remanded with directions to enter a judgment consistent with this opinion.
REVERSED AND REMANDED.
HORNSBY, C.J., and MADDOX, SHORES, ADAMS and KENNEDY, JJ., concur.
ALMON and STEAGALL, JJ., concur in the result.
JONES and HOUSTON, JJ., dissent.
STEAGALL, Justice (concurring in the result).
I concur in the result. I would add, however, that it would have been a better-reasoned approach to fashion the single-member-district plan prospectively.
JONES, Justice (dissenting).
Because I would affirm the judgment appealed from, I set out the trial court's "Final Judgment" and adopt the same as my dissenting opinion:
"This cause came on to be heard at the time scheduled for the oral hearing on the merits. By its Order dated August 8, 1989, the court consolidated the hearing on the Plaintiff's request for a preliminary injunction with the hearing on the merits. In this case the Plaintiff claims that by enacting Ordinance 89-46 the Birmingham City Council has attempted to remove duly elected council members from office prior to the end of their elected terms. The Defendants claim they are authorized to enact Ordinance 89-46 by Ala.Code 1975, § 11-43-63. The parties have filed a detailed `Stipulation' containing facts and exhibits. The court will, therefore, only set out certain general facts and provisions of law in this opinion.
"The facts and the provisions of the State statutes and Constitution, which are involved in this case, are as follows:
"1. Article VII, Section 175, Constitution of Alabama of 1901, states:
"`The ... mayors, intendants, and all other officers of incorporated cities and towns in this state, may be removed from office for any of the causes specified in Section 173 of this Constitution....'
"and then goes on to describe the procedures to be followed to effect such removal.
"2. Article VII, Section 173, Constitution of Alabama of 1901, states that the grounds for impeachment or removal from office are:
"`... willful neglect of duty, corruption in office, incompetency, or intemperance in the use of intoxicating liquors or narcotics to such an extent, in view of the dignity of the office and importance of its duties, as unfits the officer for the discharge of such duties, or for any offense involving moral turpitude while in office, or committed under color thereof, or connected therewith....'
"3. Article IV, Section 60, Constitution of Alabama of 1901, provides that no person convicted of embezzlement of the public *365 money, bribery, perjury, or other infamous crime, shall be eligible to the legislature, or capable of holding any office of trust or profit in this state.
"4. Article IV, Section 89, Constitution of Alabama of 1901, provides that the legislature shall not have the power to authorize any municipal corporation to pass laws inconsistent with the general laws of this state.
"5. In 1955, the state legislature passed, and the citizens of Birmingham in a subsequent referendum approved, the Mayor-Council Act, which established a mayor and city council as the government for the City of Birmingham. The Mayor-Council Act provided for the members of the City Council to be elected at-large with five members of the nine person council running for office every two years. The four candidates receiving the largest number of votes serve a term of four years and the candidate receiving the fifth largest number of votes serves a term of two years and thus provides the fifth council person's term expiring for the election in the following two years.
"6. Section 11-43-63 provides that a city council may change the method of the election of its council members from running at-large to running from single-member districts. Section 11-43-63 specifically refers to a Class 1 municipality when it authorizes up to nine districts in Class 1, 2, and 3 municipalities, whereas other municipalities are only authorized to have not less than five nor more than seven districts. The only Class 1 municipality is the City of Birmingham.
"7. On March 28, 1989, the Birmingham City Council adopted Ordinance 89-46, which changes the method of election of the council members from running at-large to running from nine single-member districts. Ordinance No. 89-46 also provided as follows:
"`Section 10. It is hereby established and declared that any Council member who was elected to the Council during the October, 1987, general municipal election and who was elected to serve a four (4) year term of office shall have his or her four year term of office reduced to a two (2) year term of office. It is the intent and purpose of this section to enable and facilitate the election of all the initial district Council members during the same general municipal election, commencing on the second Tuesday in October of 1989 and with subsequent general municipal elections every four years thereafter.
"`Section 13. All ordinances, laws, and resolutions, or parts thereof, relating to or affecting the manner in which the City elects its Council members, their terms in office and their qualifications shall be superseded to the extent that the same are inconsistent with the provisions of this Ordinance and § 11-43-63. This Ordinance shall change the manner in which Council members are elected, their terms in office, and their qualifications, only to the extent expressly and impliedly authorized in § 11-43-63.'
"The election pursuant to Ordinance No. 89-46 is scheduled for October 10, 1989.
"8. None of the grounds for the removal of a council member from office pursuant to Sections 175, 173, or 60 of the Alabama Constitution are present in this case and none of the procedures required by those sections have been followed.
"9. The Plaintiff, Michael G. Graffeo, is an incumbent member of the Birmingham City Council. In the election held on October 13, 1987, the Plaintiff received the second largest number of votes cast for the candidates for the City Council, thus becoming one of the four candidates elected for a four-year term. If Ordinance 89-46 is effective, it will terminate the Plaintiff's term at the end of two years instead of the four for which he was elected.
"10. In the election held October 13, 1987, Councilman David Herring received the largest number of votes cast and thus was one of the four candidates elected for a four-year term. Under Ordinance 89-46, David Herring and the Plaintiff live in the same single-member district and, thus, at least one will be removed from office.
"At the outset, the court notes that the constitutionality of the at-large voting system *366 in the City of Birmingham is not an issue in this case. Both parties have agreed that the at-large voting system does not violate any provision of the United States Constitution. Furthermore, that is an issue that is presently pending in the case styled Slaughter v. City of Birmingham, CV 87-PT-1947-S, in the Federal District Court.
"Since the constitutionality of the at-large voting system is not an issue, for the purposes of this opinion the court assumes that the council members elected in the 1987 election were duly elected. This court is not ruling on the issues that would arise if the at-large voting system resulted in constitutional violations so that the provisions of the Alabama Constitution might come in conflict with the provisions of the United States Constitution or so that the results of the 1987 election might be declared invalid. That may also be an issue pending in the Federal District Court.
"The court further notes that it has no jurisdiction to interpret or rule on the preclearance provisions of the Federal Voting Rights Act as those issues are within the exclusive jurisdiction of the federal courts. Mitchell v. City of Prichard, 538 So.2d 1 (Ala.1988).
"This court does, however, have jurisdiction to consider the constitutionality of Ordinance 89-46, even after it has been precleared by the Justice Department. In Slaughter v. City of Birmingham, supra, Judge Robert B. Propst entered an Order and Memorandum Opinion on July 31, 1989, which stated:
"`As previously discussed, Ordinance 89-46, establishing single-member districts, has been precleared by the Attorney General. Preclearance is not, however, tantamount to a finding that the action is constitutional. 42 U.S.C. § 1973(c) explicitly states that "[n]either an affirmative indication by the Attorney General that no objection will be made, nor the Attorney General's failure to object, nor a declaratory judgment entered under this section shall bar a subsequent action to enjoin enforcement of such qualification, prerequisite, standard, practice or procedure." (Emphasis added.) Congress clearly intended that a precleared procedure could be subsequently challenged....'
"Judge Propst went on to state:
"`Defendants have contended that any further claim in this case must be heard and determined by a court of three judges. 42 U.S.C. § 1973(c). Defendants misinterpret the interplay between the Section 5 preclearance provisions and a subsequent attack on the constitutionality of a precleared procedure.'
"In this action, the court is dealing with laws at three different levels. The highest level involves the provisions of the Alabama Constitution. The middle level involves the Mayor-Council Act and § 11-43-63, which are state statutes. The lower level is Ordinance 89-46, which was passed by the City Council. The state legislature may not pass a statute which conflicts with the provisions of the Alabama Constitution and the City Council may not pass an ordinance which conflicts with the provisions of either the Alabama Constitution or a state statute.
"The Plaintiff argues that the City Council may neither remove him (or any other council member) from office, nor may it shorten his term. Plaintiff argues that since the inevitable result of Ordinance 89-46 will be to shorten the term of four council members and the removal of at least one of the present council members from office, the provisions of Ordinance 89-46 are unconstitutional.
"The Defendants argue that § 11-43-63 specifically authorizes their action in passing Ordinance 89-46 and thus the Plaintiff has no legal basis for his challenge to that action.
"The court notes the following general principles of law. First, the procedures and grounds for removal set out in the Alabama Constitution have been held to be the exclusive grounds for removal (Nolen v. State ex rel. Moore, 118 Ala. 154, 24 So. 251 (1898)), and the legislature may not prescribe any other causes for removal or shortening of the officeholder's term of office. State ex rel. Chambers v. Bates, *367 233 Ala. 251, 171 So. 370 (1936); Roberts v. Fredrick, 295 Ala. 281, 328 So.2d 277 (1976). Second, § 11-43-63 contains general provisions related to its subject matter, whereas the Mayor-Council Act contains special provisions relating to a specific subject. In such a situation, the rules of construction of statutes provide that special provisions relating to specific subjects control general provisions relating to general subjects. The things specifically treated will be considered as exceptions to the general provisions. Miller v. State, 249 Ala. 14, 29 So.2d 411 (1947); Murphy v. City of Mobile, 504 So.2d 243 (Ala.1987). The opinion in the Miller case [quotes from the earlier case of Herring v. Griffin, 211 Ala. 225, 226, 100 So. 202, 203 (1924)]:
"`When the law descends to particulars, such more special provisions must be understood as exceptions to any general rules laid down to the contrary; and the general rules must not (vice versa) be alleged in confutation of the special provisions.'
"The Miller case involved a situation in which the board of commissioners of the City of Anniston, Alabama, passed a regulation abolishing the office of chief of police and creating the office of director of traffic and law enforcement. The effect was to remove the existing police chief (since his office was abolished) and to appoint a different person to the newly established position. The commission's action was taken under Code 1940, Tit. 62, § 420, which authorized a board of commissioners to remove city employees. The police chief challenged the action based upon Code 1940, Tit. 62, § 402, which established civil service laws. The Alabama Supreme Court first stated that, as to the chief of police, chief of the fire department, and policemen and firemen of the City of Anniston, the provisions of § 420 and § 402 could not be reconciled and the issue turned on which statute prevailed. The Court then found that § 420 was a general provision covering all employees of the city and that § 402 specifically covered policemen and firemen. The Supreme Court held in favor of the specific provisions of § 402.
"The Murphy case involved a conflict between the provisions of § 11-44C-28, which provides for at least five votes to pass a resolution by the Mobile City Council, and § 12-14-30(a), which provides that municipal judges may be appointed by a majority vote of a city council. The Alabama Supreme Court held that, even though § 11-44C-28 applied only to the government of Class 2 municipalities, § 12-14-30(a) was more specific because it applied to the appointment of municipal judges.
"The court finds that to the extent § 11-43-63 would authorize the City Council to remove a public official from office, it violates the Alabama Constitution. The court had hoped that this issue had been settled when the Mayor-Council Act was first adopted and then-Commissioner Connor challenged the Act. However, in Connor v. State, 275 Ala. 230, 153 So.2d 787 (1963), the Supreme Court stated:
"`Although appellees, in their petition, challenged the constitutionality of Act No. 71, no specific ruling on the question was made by the trial court. Aside from that, no question as to the Act's constitutionality is raised on this appeal.' [275 Ala. at 233, 153 So.2d at 790.]
"With the Connor case not settling the issue, the court believes the Supreme Court's ruling in Williams v. State, 197 Ala. 40, 72 So. 330 (1916), is the controlling law. The Williams case dealt with a statute that created the office of commissioner in the City of Mobile and fixed the the term of office at three years. The statute also contained a recall provision which allowed the voters to remove a commissioner before the end of his term. After citing the provisions of Section 173 and 175 of the Alabama Constitution, the Supreme Court said:
"`A majority of the court are of the opinion, and hold, that the office of commissioner, created by the statute, is within the protection of section 175 of the Constitution; and that, the statute fixing the term of office at three years, an incumbent cannot be removed from office during the term for which he is *368 elected, by recall or otherwise, except by the mode and in the manner, and for the causes, fixed in the constitutional provisions above quoted. It therefore follows that section 14 of the statute in question is void and of no effect, and that appellee cannot be removed from office by recall, the mode here attempted to be invoked, as provided in that section of the statute.
"`The case made by this record is the same in legal effect as that made in Nolen's Case, 118 Ala. 154, 24 South. 251, and the two cases are not distinguishable. If Moore could not be removed from office except by impeachment, as provided by section 175 of the Constitution, then Schwarz cannot be removed except by the same mode and in the same manner. When Moore was elected to office, there was in force a statute authorizing the Governor to remove him and appoint a commissioner in his stead. Therefore, the statutes fixing his term and providing for his election, and the one authorizing his removal, must all be construed together and as if constituting but one statute. So construing them, the court held that he could not be removed except by impeachment, because the Constitution provided the only mode of removal of such officers during the term for which they were elected. There can be no doubt that the statute in question fixes the term of office at three years and provides for the filling of the office by election and otherwise; and, when a person is elected or appointed to the office for that term, then the Constitution says that he may not be removed by the mode of recall. The Constitution and the statute are therefore clearly in conflict and, of course, the Constitution controls. The inhibitions of the Constitution must be read into all statutes; and, when so read into the statute in question, they render inoperative the recall provisions of the statute.' [197 Ala. at 41-42, 72 So. at 331.]
"Thus, to the extent that any portion of § 11-43-63 provides a means to remove a council member from office during their term, by any means other than that set out in the Alabama Constitution, that portion of § 11-43-63 is unenforceable.
"The Defendants argue that when the power to create an office is granted to a municipality, the power to destroy that office is inherent in the grant of power. Oldham v. Mayor of Birmingham, 102 Ala. 357, 14 So. 793 (1894). The Defendants also argue that an exception to the principle that a public official may not be removed from office during his term is in the instance when the office held by that person is abolished. There are numerous cases to support this argument. Comer v. City of Mobile, 337 So.2d 742 (Ala.1976); State v. Hester, 260 Ala. 566, 72 So.2d 61 (1954).
"In the case before this court, it is clear that the grant of power which established the City Council, the provisions of the Mayor-Council Act, specifically withheld the power to abolish the City Council. Section 3.10 of the Mayor-Council Act provides:
"`Sec. 3.10. Creation of new departments or offices; change of duties.
"`The council by ordinance may create, change, and abolish offices, departments or agencies, other than the offices, departments and agencies established by this act. The council by ordinance may assign additional functions or duties to offices, departments or agencies established by this act, but may not discontinue or assign to any other office, department or agency any function or duty assigned by this act to a particular office, department or agency.' (Emphasis added.)
"Furthermore, by the terms of Ordinance 89-46, it is clear that the City Council was not attempting to abolish itself. The Ordinance clearly states that it is intended to reduce the four year terms to two years and to change the manner in which the council members are elected. (Ordinance 89-46, Sections 10 and 13.)
"Several cases do hold that the legislature may abolish an office and thereby cut short the term of the officeholder. However, these cases generally deal with acts of the legislature, not acts of a city council. Clearly, the City Council may not amend a *369 legislative act (such as the Mayor-Council Act), nor may it pass ordinances in conflict with such acts. The Defendants argue that § 11-43-63 must be construed to amend the Mayor-Council Act either by granting the City Council the right to change the terms of council members or to abolish the existing City Council and establish a different method of electing a new one. The court has already found that the provisions of the Mayor-Council Act are specific, whereas the provisions of § 11-43-63 are general. Thus, to the extent that there is a conflict between the provisions of these two statutes, the provisions of the Mayor-Council Act control. It is true that § 11-43-63 refers to Class 1 municipalities, and, thus, to the City of Birmingham; however, in Murphy v. City of Mobile, supra, § 11-44C-28 applied to Mobile, as a Class 2 municipality, and the Supreme Court held that § 11-14-30(a), which applied to the election of all municipal judges, was more specific. Even if § 11-43-63 could be interpreted to authorize the City Council to amend the Mayor-Council Act to change the term of office of the City Council members, it could not authorize the City Council to cut existing terms short without coming in conflict with the terms of the Alabama Constitution.
"The only constitutionally permissible construction which may be given to § 11-43-63, which would authorize the City Council's actions under Ordinance 89-46, would be to find that § 11-43-63 amended Section 3.10 of the Mayor-Council Act so as to authorize the City Council to change the term of office of future council members to two years or to abolish the offices of city council members and create new offices. The City Council did not attempt to change the terms of office of future council members, so that issue is not before the court. If the legislature intended to amend the Mayor-Council Act to allow the City Council to abolish itself, it should have done so by some clear or specific act, not by some vague implication that may or may not be drawn by the reference in § 11-43-63 to a Class 1 municipality. Presumably, the legislature could amend the Mayor-Council Act to change the term of office of a future council member or, if it desired, could give that authority to the City Council. There is, however, some question as to whether the legislature could grant the City Council the right to abolish itself or even to change from at-large elections to single-member district elections without approval of the Birmingham voters. In Beer v. United States, 425 U.S. 130, 47 L.Ed.2d 629, 96 S.Ct. 1357 (1976), the United States Supreme Court stated:
"`... Indeed, since those [two at-large council] seats had been established in 1954 by the city charter, an ordinance could not have altered them; any change in the charter would have required approval of the city's voters.' [425 U.S. at 138-39, 47 L.Ed.2d at 638, 96 S.Ct. at 1362.]
"The Beer case dealt with the New Orleans city charter which required a seven-member city council with five members elected from single-member districts and two elected at-large. The council was required to redistrict itself after each dicennial census and the proposed redistricting plan had not received approval under Section 5 of the Voting Rights Act. The United States Supreme Court held that the redistricting plan could not be rejected because it did not eliminate the two at-large seats since, among other reasons, that would have required approval of the city's voters.
"The Defendants argue that the Plaintiff has no standing to challenge the City Council's action in the passage of Ordinance 89-46. The Defendants, in fact, argue that this is a `political question' and that no one has a right to challenge such action in the courts. Since this Plaintiff is a resident citizen of Birmingham, a taxpayer, a registered voter who voted in the 1987 city council election, and a member of the City Council whose four-year term is cut short by Ordinance 89-46, the court finds that he has standing to bring this action.
"The Defendants have also argued that the Plaintiff is barred by laches from bringing this action. Based on the timing of the filing of this case and the fact situation *370 and background involved, the court finds that the Plaintiff is not barred by laches from bringing this action.
"It is, therefore, ORDERED, ADJUDGED, and DECREED by the court as follows:
"ONE: The Plaintiff has standing to maintain this action.
"TWO: The Plaintiff is not barred by laches from bringing this action.
"THREE: The City Council may not reduce, cut short or terminate the terms of any of its members and to the extent that Ordinance 89-46 attempts to accomplish that result it is unenforceable.
"FOUR: The City Council may not abolish itself or the office of any city council member.
"FIVE: The City Council may not, by passage of an ordinance, amend a state statute and, thus, Ordinance 89-46 may not be construed to amend the Mayor-Council Act or change the terms of city council members which are set out in the Mayor-Council Act.
"SIX: Section 11-43-63 may not be interpreted so as to authorize the removal of a city council member from office prior to the expiration of such member's term.
"SEVEN: Section 11-43-63 does not amend the Mayor-Council Act so as to authorize the City Council to abolish itself or the office of any city council member.
"EIGHT: Section 11-43-63 does not amend the Mayor-Council Act so as to authorize the City Council to change the term of office of any city council member.
"NINE: To the extent that there is a conflict in the provisions of the Mayor-Council Act and § 11-43-63, the provisions of the Mayor-Council Act control because they are specific provisions whereas the provisions of § 11-43-63 are general provisions.
"TEN: The City of Birmingham is enjoined from implementing the provisions of Ordinance 89-46 calling for an election of council members from single-member districts on October 10, 1989.
"ELEVEN: The costs of this action are taxed to the Defendants.
"DONE and ORDERED this 6th day of September, 1989.
 "/s/ Jack D. Carl
 "CIRCUIT JUDGE"
HOUSTON, J., concurs.
NOTES
[1] This is a long-time provision of Alabama law. See Ala.Code 1975, § 11-43-1.
[2] Springer v. State, 229 Ala. 339, 157 So. 219 (Ala.1934), was also cited by Graffeo. In Springer, the party seeking to take office pursuant to the new legislation did not seek to oust the incumbent from office until after the incumbent's appointed term, and thereby waived the question of applicability of § 175. The Court did not, accordingly, address the issue of the right of the officer to continue holding office in light of a change in the term of the office by legislative action.