HOUSTON, Justice.
The plaintiffs appeal from a judgment entered by the Circuit Court of Mobile County after a jury trial in favor of the defendants, the City of Mobile and Dan Haggerty & Associates, Inc. (hereinafter referred to as “Haggerty”). This class action was brought in favor of all persons who had paid delinquent Mobile Municipal Court fines and “delinquent fees” pursuant to collection letters sent out by Haggerty, while acting as an agent for Mobile’s municipal court. We affirm.
FACTUAL BACKGROUND
On December 23,1991, Haggerty contracted with the City of Mobile to provide collection services for the Mobile Municipal Court. The contract called for Haggerty to “provide management services limited to the management/collection of delinquent fines, court costs, charges and fees from persons, subject to unsatisfied attachments or warrants related to traffic violations and misdemeanors.” Using the list of names and addresses provided by the Mobile Municipal Court, Hag-gerty sent collection letters on Mobile Municipal Court letterhead informing persons with unsatisfied fines and cost assessments that a warrant had been issued for their arrest and informing them of the total amount of money they must pay in order to avoid arrest.[1] The amount listed in the vast majority of these letters included a “delinquent fee,” which was calculated as 38% of the total fine and court costs owed.
Mobile Municipal Court Judge James H. Lackey testified that he had agreed to add this “delinquent fee” pursuant to the contract between the City of Mobile and Haggerty; he testified that the fee was based upon an understanding reached between him and Haggerty. In the contract, the City of Mobile had agreed to pay Haggerty for its collection services on a contingency basis. The plaintiff class alleged that the defendants agreed to add the 38% contingency fee to the total amount sought to be collected from all persons. Judge Lackey testified at trial though that there actually were two distinct categories of delinquent cases turned over to Haggerty. The first category, which constituted all but a small minority of the cases turned over, consisted of cases against persons who had been given traffic tickets or citations for other misdemeanors, but who had failed to plead guilty or to appear to contest the charges against them. As to this category of cases, Judge Lackey testified that he agreed to add 38% of the pending total fines and court costs as an additional fine (referred to in the letters as a “delinquent fee”), when the persons responding to Haggerty’s collection letters appeared to pay their fines and thereby plead guilty to the pending charges. The second category consisted of eases against persons who had appeared in the municipal court and had been found guilty, but who after having been given additional time to pay their fines had failed to do so. Judge Lackey testified that the Haggerty agreement provided for the collection of the already assessed fine without the *509 addition of a “38% delinquent fee.” According to Judge Lackey, Haggerty’s contingency fee for this second category of cases was to be subtracted from the original fine amount rather than added thereto.
PROCEDURAL BACKGROUND
This ease was filed on June 1, 1993, and it was certified as a class action on September 2, 1994. It named Haggerty and the City of Mobile as defendants. The class was composed of all persons who had paid overdue fines and “delinquent fees” pursuant to letters sent by Haggerty. The gravamen of the claims centers around the question whether the city had the legal authority to hire Hag-gerty, a private collection agency, to collect delinquent fines at all and whether the City of Mobile had statutory or rule authority to assess “delinquent fees” on the class members. The plaintiff class alleged causes of action based upon negligent misrepresentation, intentional misrepresentation, deceit, outrage, bad faith, breach of contract, negligence, and 42 U.S.C. § 1983.
On February 21, 1995, the case went to trial on all claims. At the close of the plaintiffs’ case, the defendants filed a motion for a directed verdict, which the court granted as to the bad faith and negligence claims. The judge granted the defendants’ motion for a directed verdict made at the close of all the evidence, as to the plaintiffs’ 42 U.S.C. § 1983 claims and the claim for punitive damages. During the trial, the class renewed its motion for a partial summary judgment as to the issue of the legality of the Haggerty collection agreement and the legality of the “delinquent fees” charged. The judge denied the plaintiffs’ motion, ultimately submitting to the jury the question of the legality of the assessment of the “delinquent fees.” The special verdict submitted to the jury asked simply whether Judge Lackey, the Mobile Municipal Court Judge, authorized the “delinquent fees.” The jury returned a verdict for the defendants, finding that the “delinquent fees” had been authorized by Judge Lackey, and the court held that they were therefore legal.
The class appeals from the judgment entered in favor of the defendants. The class asserts that it was error for the trial court to deny its motion for a partial summary judgment. It asserts that the trial court should have ruled as a matter of law that the City had no legal authority to contract with a private collection agency to collect past due municipal court fines. The class likewise asserts that the trial court should have also ruled that, as a matter of law, Mobile had no legal authority to tack on a 38% “delinquent fee” to any of the cases assigned to Haggerty, as compensation to Haggerty.
I.
The class contends that the trial court erred in denying its motion for a partial summary judgment as to the question of the legality of the agreement. The class bases its argument in this regard solely upon the absence of any express statutory or rule-based authority specifically permitting Alabama cities to contract with private companies for the collection of municipal court fines. The class correctly points out that “[cjities are political subdivisions of the State ... and each exercis[es] such power, and only such power, as is conferred upon it by law.” Alexander v. State ex rel. Carver, 274 Ala. 441, 443, 150 So.2d 204, 206 (1963).
Although municipalities exercise “such power ... as is conferred upon [them] by law,” a municipality need not predicate its every action upon some specific express grant of power. Alabama’s cities possess certain implied powers that derive from the nature of the powers expressly granted to them by the legislature. This Court in City of Birmingham v. Graffeo, 551 So.2d 357, 360 (Ala.1989), reaffirmed this basic principle stating that “[a] municipality may exercise those powers that are explicitly granted to it by the legislature, as well as those powers that are necessarily implied from an express grant of power.”
Section 12-14-2(a), Ala.Code 1975, mandates that “munieipalit[ies] shall provide appropriate facilities and necessary supportive personnel for [their] municipal courife].” Cities fulfill this mandate to support their municipal courts in part through exacting and collecting fines for misdemeanor and *510 traffic offenses. Section 11-40-1 expressly grants to cities the power to enter into contracts in furtherance of their governmental functions. The power to contract with a private firm to aid in the collection of delinquent municipal court fines can and must be “necessarily implied” from the power granted to- cities and the obligation imposed on cities in § 12-14-2(a) to adequately support their municipal courts. The trial court, therefore, correctly denied the plaintiff class a partial summary judgment, refusing to hold the contract illegal.
II.
The jury determined that it was Mobile Municipal Court Judge Lackey who imposed the “delinquent fees” allegedly charged to the members of the plaintiff class. While the plaintiff class may be correct in arguing that a mayor or city council acting alone cannot legally impose an additional fine on persons who have already been ticketed or given a misdemeanor citation, we are bound by the jury’s determination that Judge Lackey ordered the increase in fines. The issue actually before us then becomes whether a municipal court judge acting pursuant to a collection contract can legally impose an additional fine (1) on persons who have delinquent pending traffic tickets or citations and yet have refused to plead guilty or to appear in court to contest their guilt; or (2) on persons who have previously been found guilty of a traffic or misdemeanor offense and after being given additional time to pay their fines have failed to pay them.
a.
As to the first subclass of plaintiffs, Judge Lackey clearly had the legal authority to increase the fines in these pending cases because of the failure of those persons to answer the charges filed against them, after being given, in most eases, years to do so. Judge Lackey testified that before retaining Haggerty’s services he had routinely increased the fines of such persons by $40 to help defer the administrative costs incurred in locating the defendants and holding them responsible for their delinquent citations. Even though the “delinquent fees” in question in this action were imposed in order to defer the costs of a private company’s collection services and were not imposed in a more traditional manner, the “delinquent fees” were legitimate increases in the class members’ fines. Judge Lackey testified that he ordered the increase on a case-by-ease basis, as a defendant returned the collection letter with payment, in essence pleading guilty to the offense charged in the original ticket or citation. None of the fines assessed exceeded the $500 jurisdictional limit placed on municipal court fines by Ala.Code 1975, § ll-45-9(b).
Rule 19(C)(2), Ala.R.Jud.Adm., states:
“When a defendant fails to appear pursuant to a ticket issued to him, the court may, in its discretion, issue further notice, and, if the offense is contained in a magistrate’s fine schedule for traffic offenses ..., increase the amount of the fine above the scheduled amount for such offense. ...”
(Emphasis added.) Rule 20(E)(3), Ala.R.Jud. Adm., gives municipal court judges the same authority to increase fines for nontraffic offenses, based on a failure to appear. Rules 19(C)(2) and 20(E)(3) clearly authorized Judge Lackey to increase the fines of the members of the first subclass of plaintiffs. We therefore hold that the trial judge properly denied the plaintiffs’ request for a partial summary judgment on the question of the legality of the “delinquent fees” charged to class members With delinquent pending traffic tickets or citations.
b.
The plaintiffs also contend that a 38% “delinquent fee” was added to the already assessed fines of those persons in the second category of cases. Although the plaintiffs produced testimony showing that one member of this subclass, who had previously pleaded guilty to a traffic offense, was sent a collection letter requesting the payment of an additional “delinquent fee,” that same witness’s testimony showed that Judge Lackey did not charge her any “delinquent fee” once she appeared before him. The plaintiffs produced no evidence showing that any of the members of this second subclass ever paid a “delinquent fee.” Furthermore, Judge Lack *511 ey testified that no additional “delinquent fee” was intended to be added to any previously assessed fines of persons in this second category and that so far as he knew no one in this subclass was assessed a “delinquent fee.”
Because of the complete absence of any substantial evidence tending to show that a “delinquent fee” was charged to any of the members of this second subclass, we need not now consider the legality of the assessment of a “delinquent fee” against persons who had previously been convicted or had previously pleaded guilty to traffic or misdemeanor offenses, but who had failed to promptly pay their fines.
III.
The plaintiffs raised other issues in their appeal, but our ruling regarding the first two issues disposes of those other issues. It is therefore unnecessary to address them.
AFFIRMED.
HOOPER, C.J., and MADDOX, SHORES, KENNEDY, COOK, and BUTTS, JJ., concur.

. At trial, there was uncontroverted evidence showing that Haggerty was very successful in its efforts to collect on the cases assigned to it. Out of the approximately 35,000 delinquent cases turned over to Haggerty by the City, dating from January 1, 1980, to November 30, 1991, Haggerty collected over $1.2 million dollars for the City of Mobile.