The City of Birmingham ("Birmingham"); the Birmingham City Council ("the City Council"); and employees of the Birmingham fire and rescue service, namely, Marlin D. Willis, Donald R. Baker, and Roger D. Wyatt, along with employees of the Birmingham Police Department, namely, Dexter Cunningham, Scott Morro, and Daphanie Horton (hereinafter collectively referred to as "the employees"), appeal from a summary judgment in favor of Bernard Kincaid, in his official capacity as mayor of Birmingham, declaring void and unenforceable City Council resolution no. 2013-06, as amended. We reverse and remand.
This dispute began on September 26, 2006, when the City Council passed resolution no. 2013-06, contemplating a 5% salary increase for certain classes of employees of Birmingham. The resolution stated, in pertinent part:
 "NOW, THEREFORE, BE IT RESOLVED by the Council of the City of Birmingham as follows:
 ". . . .
 "2. That the City of Birmingham will increase the rate of pay for each City of Birmingham police officer who meets the Alabama Peace Officers Training Commission minimum standards, each City of Birmingham jail correctional specialist who has successfully completed the required course of training for such position through the City of Birmingham Police Academy, each City of Birmingham firefighter who meets the State firefighters minimum standards, and each City of Birmingham Fire Prevention Inspector, Senior Fire Prevention Inspector, and *Page 1102 
Chief Fire Prevention Inspector. . . .
 ". . . .
 "4. The Mayor is requested to reply to this resolution in the fiscal 2008 budget."
(Emphasis added.)
Mayor Kincaid vetoed resolution no. 2013-06, but the City Council overrode his veto and submitted resolution no. 2013-06 to the Jefferson County Personnel Board ("the Board"), which approved it on November 16, 2006. On December 19, 2006, the City Council passed resolution no. 2851-06, which amended resolution no. 2013-06 to clarify that the salary increases authorized by resolution no. 2013-06 were to "be effective in the fiscal 2008 budget." More specifically, the pertinent amendment stated: "The Mayor is directed to apply the provisions of Resolution 2013-06 in the fiscal 2008 budget." Mayor Kincaid also vetoed that resolution, but his veto was overridden and the amendment was approved by the Board. Resolution no. 2013-06, as amended, is hereinafter referred to as "the resolution."
Mayor Kincaid filed a complaint for a declaratory judgment against Birmingham, the Board, and the City Council. The complaint alleged that the resolution, by which the City Council sought to "alter, on its own initiative, the Pay Plan for [certain Birmingham] employees[,] is not authorized by state or local statute, [and operates] to usurp powers granted [solely] to the Mayor by the Mayor-Council Act of 1955," i.e., Act No. 452, Ala. Acts 1955, as supplemented by Act No. 1168, Ala. Acts 1973. The complaint sought a judgment declaring the resolution "null and void."
Birmingham and the City Council answered the complaint with defenses and a counterclaim, averring that "[t]he Resolution's increase of salaries for certain employee classes . . . is expressly authorized by Section 12 of Act No. [248] of the Legislature of Alabama (Regular Session, 1945) as amended" ("the Civil Service Act"). The counterclaim sought a judgment declaring that the resolution is valid and effective and that the City Council is "the governing body for purposes of the [Civil Service Act]" with authority to implement the salary increases at issue in this action. The employees, who are subject to the Civil Service Act and would be affected by the proposed salary increase, were allowed to intervene in the case.
All parties moved for summary judgments. On April 30, 2007, the trial court entered a summary judgment in favor of Mayor Kincaid, holding that the resolution was "invalid and unenforceable under the provisions of the Mayor-Council Act of 1955 and the [Civil Service Act]." The trial court essentially held that, consistent with the Mayor-Council Act, the City Council could initiate a salary increase only as incidental to a resolution adopting a budget proposal submitted by Mayor Kincaid for the ensuing budgetary year. Subsequently, appeals were filed by Birmingham and the City Council (hereinafter referred to collectively as "the City") (case no. 1061184) and by the employees (case no. 1061154). We consolidated these appeals and must now find the proper balance between the Mayor-Council Act and the Civil Service Act in the context of salary increases for employees subject to the Civil Service Act.
In so doing, we are guided by well-established principles of statutory construction. First and foremost, "[m]atters of policy are for the Legislature and, whether wise or unwise, legislative policies are of no concern to the courts."Marsh v. Green, 782 So.2d 223, 231 (Ala. 2000). "[I]t is not the duty of this Court to question the wisdom, or the lack thereof, used by *Page 1103 
the Legislature in enacting the laws of this State." Exparte T.D.T., 745 So.2d 899, 904 (Ala. 1999). "[T]his Court is not at liberty to rewrite [a] statute or to substitute its judgment for that of the legislature." Gowens v. Tys.S., 948 So.2d 513, 522 n. 1 (Ala. 2006); see also Exparte Carlton, 867 So.2d 332, 338 (Ala. 2003).
"[S]tatutes must be construed in pari materia in light of their application to the same general subject matter. . . . Our obligation is to construe [the] provisions `in favor of each other to form one harmonious plan,' if it is possible to do so." Opinion of the Justices No. 334,599 So.2d 1166, 1168 (Ala. 1992) (quoting Ex parte Coffee CountyComm'n, 583 So.2d 985, 988 (Ala. 1991)). Because our review turns on statutory construction, that review is denovo. Scott Bridge Co. v. Wright, 883 So.2d 1221, 1223
(Ala. 2003).
The Civil Service Act created the Board and "[t]he civil service system applicable to Jefferson County and municipalities located therein." Henderson v.Arlington, 392 So.2d 806, 808 (Ala. 1980). Section 12 of the Civil Service Act, as amended by § 4 of Act No. 684, Ala. Acts 1977, states, in pertinent part:
 "The director of personnel . . . shall. . . . [e]stablish after consultation with the governing bodies affected, a pay plan and salary schedule for all positions which shall contain a minimum rate, a maximum rate and such intermediate and premium rates as are deemed necessary by the personnel board, which shall become effective within thirty days after submission to the governing body concerned, provided that the governing body of each county and municipality affected hereby may raise or lower such schedule by applying the same percentage of increase or decrease to the entire schedule, provided, however, no governing body shall raise such entire schedule within twelve months after the adoption of a new salary schedule, nor within twelve months immediately preceding any primary or general elections in which the members of the said governing body are to be elected, except upon the approval of the personnel board, provided further that any office or position created by an Act of the Legislature, or by a municipality, or county authority, subsequent to the passage of [the Civil Service Act], the personnel director shall survey the duties and responsibilities of such office or position, and submit his findings to the personnel board; and the salary for such office or position shall be fixed by the personnel board. Provided further, that the personnel board shall advise the governing body of the county or municipality of the salary fixed for such office or position. Changes in the salary schedule of one class or a number of classes less than all may also be made by order or resolution of a governing body as follows: A certified copy of such order or resolution shall be filed with the personnel board, and unless the said resolution or order be disapproved by said personnel board within thirty days after the date of filing of such certified copy the same shall be valid and operative according to its terms."
(Emphasis added.)
All parties concede that the "[City] Council [is]the Governing Body, for all purposes andunder all laws pertaining to [this] declaratory judgment action." Mayor Kincaid's brief, at 5 (emphasis added). The City and the employees contend that, pursuant to § 12 of the Civil Service Act, the City Council — as the "governing body" — has the right to initiate
"[c]hanges in the salary schedule of . . . less than all" of Birmingham's civil-service employees in the manner it did so in this case. *Page 1104 
Mayor Kincaid, on the other hand, contends that the manner in which the City Council may participate in the salary process is governed by provisions of the Mayor-Council Act and that, absent compliance with the specific provisions of that act, the City Council lacks such authority. Regarding the powers of the City Council, the Mayor-Council Act provides, in pertinent part:
 "[§ 3.08] Neither the council nor any of its members shall direct or request the appointment of any person to, or his removal from, office or position by the mayor or by any of his subordinates, or in any manner take part in the appointment or removal of officers and employees in the administrative service of the city. Except for the purpose of inquiry, the council and its members shall deal with the administrative service solely through the mayor and neither the council nor any member thereof shall give orders to any subordinates of the mayor, either publicly or privately."
Act No. 452, Ala. Acts 1955, as supplemented (unofficially codified in the Code of General Ordinances, City of Birmingham (hereinafter referred to as "City Code")).
Mayor Kincaid's powers are defined in the Mayor-Council Act, in pertinent part, as follows:
 "[§ 4.06] The mayor shall be the head of the administrative branch of the city government. . . . He shall be responsible for the proper administration of all affairs of the city and, subject to the provisions of any civil service or merit system law applicable to such city and except as otherwise provided herein, he shall have power and shall be required to:
 "(1) Enforce all law and ordinances;
 "(2) Appoint and, when necessary for the good of the service, remove all officers and employees of the city except as otherwise provided by this act. . .;
 ". . . .
 "(4) Keep the council fully advised as to the financial conditions and needs of the city; prepare and submit the budget annually to the council and be responsible for its administration after its adoption; prepare and submit, as of the end of the fiscal year, a complete report on the financial and administrative activities of the city for such year.
 ". . . .
 "(8) Fix the salaries or compensation of all officers and employees of the city who are appointable by him, subject, however, to the provisions of any civil service or merit law applicable to the city.
 "(9) Employ as members of his staff such employees as the mayor may deem necessary for and on behalf of said city to assist the mayor and perform such duties relating to the mayor as the mayor may assign. Each such employee shall serve at the pleasure of the mayor [at] such compensation as the mayor may set. Such staff members shall not be under any merit or civil service system, but, should a member of the classified service under any merit or civil service system applicable to the city be appointed here-under, the provisions of this section notwithstanding, he may be paid at the salary established for his classification at the time of appointment; and such person shall not lose any rights under such merit or civil service system by reason of his appointment hereunder and shall, upon termination of service on the mayor's staff, have the right to return to the classified service, with full credit for time served on the mayor's staff, at the *Page 1105 
same or higher classification as that held upon appointment hereunder."
City Code (emphasis added).
The Mayor-Council Act contains the following relevant budgetary provisions:
 "[§ 5.01] The fiscal year of the city government shall begin on the first day of July and shall end on the last day of June of each calendar year. Such fiscal year shall also constitute the budget and accounting year. As used in this act, the term `budget year' shall mean the fiscal year for which any particular budget is adopted and in which it is administered. . . .
 "[§ 5.02] On a day to be fixed by the council but in no case later than the 20th day of May in each year, the mayor shall submit to the council:
 "(a) a separate current revenue and expense budget for the general operation of the city government, to be known as the `general fund budget';
 "(b) a budget for each public utility owned and operated by such city;
 "(c) a capital budget; and
 "(d) a budget message.
 ". . . .
 "[§ 5.08] At the meeting of the council at which the budget and budget message are submitted, the council shall determine the place and time of the public hearing on the budget, and shall cause to be published a notice of the place and time, not less than seven (7) days after the date of publication, at which the council will hold a public hearing. . . .
 "[§ 5.09] After the conclusion of the public hearing the council may insert new items of expenditures or may increase . . . items of expenditure in the general fund budget. . . . The council shall not . . . cause the total of expenditures as recommended by the mayor to be increased without a public hearing on such increase. . . .
 "[§ 5.10] Not later than the 20th day of June of the current fiscal year, the council by a majority vote shall adopt the general fund budget, and such ordinances providing for additional revenue as may be necessary to put the budget in balance. If for any reason the council fails to adopt the general fund budget on or before such day, the general fund budget of the current fiscal year shall be the general fund budget for the ensuing year, until such time as a newly revised budget shall be adopted by the council, and, until such time, shall have full force and effect to the same extent as if the same had been adopted by the council, notwithstanding any thing to the contrary in this act. . . .
 ". . . .
 "[§ 5.15] Appropriations in addition to those contained in the original general find budget ordinance, may be made by the council by not less than five (5) affirmative votes, but only on the recommendation of the mayor and only if the Director of Finance certifies in writing that there is available in the general fund a sum unencumbered and unappropriated sufficient to meet such appropriation. . . .
 "[§ 5.16] At any time in any budget year, the council may, pursuant to this Section, make emergency appropriations to meet a pressing need for public expenditures, for other than a regular or recurring requirement, to protect the public health, safety or welfare. Such appropriation may be made by the council, . . . but only on the recommendation of the mayor."
City Code (emphasis added).
According to Mayor Kincaid, the Mayor-Council Act provides onlyone method by which the City Council may initiate a *Page 1106 
salary adjustment. That method is set forth in §§ 5.09 and 5.10, which Mayor Kincaid defines as the "normal budgetary process." Mayor Kincaid's brief, at 41-42. This processbegins, the argument goes, when, pursuant to § 5.02, the mayor presents to the City Council his proposed "general fund budget." "After the conclusion of the public hearing [mandated by § 5.08] the council may . . . increase . . . items of expenditure in the [proposed] general fund budget," but not without an additional "public hearing on the increase." § 5.09. This budgetary process is concluded when, "[n]ot later than the 20th day of June of the current fiscal year, the council by a majority vote [adopts] the general fund budget." § 5.10. Outside this normal budgetary process, Mayor Kincaid argues, he is the exclusive impetus for salary adjustments. See § 5.15 ("Appropriations in addition to those contained in the original general fund budget ordinance, may be made by the council . . ., but only on the recommendation of the mayor. . . ."); and § 5.16 ("the council may . . . make emergency appropriations to meet a pressing need for public expenditures, . . . but only on the recommendation of the mayor"). It is undisputed that the City Council did not follow this formula in adopting the resolution.
The City contends that the trial court interpreted these budgetary provisions too broadly and, consequently, improperly restricted the City Council from participation in adjusting salaries as the "governing body" under the Civil Service Act. According to the City, the Mayor-Council Act contains no provision "limiting the power of the City Council to adjust a salary pay plan to only after the Mayor has presented the budget." The City's brief, at 25 (emphasis added). "Nowhere in the Mayor-Council Act," says the City, "is the City Council constrained from participating in establishing pay plans for an upcoming budget cycle." Id.
(some emphasis added). We agree with the City.
Mayor Kincaid construes § 12 of the Civil Service Act as essentially repugnant to § 4.06(4) and (8) of the City Code, at least to the extent that § 12 purports to allow the City Council to initiate a salary increase outside the normal budgetary process, and argues that, to that extent, § 12 was repealed by implication by the Mayor-Council Act. We reject this argument for two reasons.
First, "`"`[r]epeal by implication is not favored.'"'"Shiv-Ram, Inc. v. McCaleb, 892 So.2d 299, 312
(Ala. 2003) (quoting Fletcher v. Tuscaloosa Fed. Sav. Loan Ass'n, 294 Ala. 173, 177, 314 So.2d 51, 55 (1975), quoting in turn State v. Bay Touring DredgingCo., 265 Ala. 282, 289, 90 So.2d 743, 749 (1956)). "A later statute may repeal an earlier statute by implication only under certain circumstances, such as when the two statutes, taken together, are so repugnant to each other that they become irreconcilable." Hurley v. Marshall County Comm'n,614 So.2d 427, 430 (Ala. 1993). "`"Implied repeal is essentially a question of determining the legislative intent as expressed in the statutes."'" Shiv-Ram,892 So.2d at 312 (quoting Fletcher, 294 Ala. at 177,314 So.2d at 55 (emphasis added)).
To be sure, the Civil Service Act predated the Mayor-Council Act by 10 years. However, the current version of § 12 was enacted in 1977, see Act No. 684, Ala. Acts 1977, at which time the section was substantially expanded. Indeed, both acts have been revisited numerous times and amended relatively recently. See, e.g., Act No. 94-564, Ala. Acts 1994 (amending the Civil Service Act); Act No. 89-739, Ala. Acts 1989 (amending the Civil Service Act); Act No. 85-919, Ala. Acts 1985 (amending the Mayor-Council Act). Thus, *Page 1107 
reference to the temporal relation of the Civil Service Act and the Mayor-Council Act yields no particular insight into the relevant legislative intent.
Second, and more material to our analysis, is reference to theonly provision in the Mayor-Council Act dealing specifically with mayoral authority over the salary schedules of civil-service employees. Specifically, § 4.06(8) authorizes the mayor to "[f]ix the salaries or compensation of all officers and employees of the city who are appointable by him." (Emphasis added.) In so doing, however, the mayor is specifically "subject . . . to the provisions of any civilservice or merit law applicable to the city." § 4.06(8) (emphasis added).
Indeed, § 4.06, which defines all mayoral duties and authority, in a prefatory clause subordinates all
mayoral authority to applicable provisions of the Civil Service Act. In particular, the prefatory clause declares that the mayor "shall be responsible for the proper administration of all affairs of the city . . ., subject to the provisions of any civil service or merit system law applicable to such city." Then, apparently for the sake of clarity or emphasis, the legislature reiterated the qualifying language in § 4.06(8), which deals specifically with mayoral authority over "salaries or compensation."
Section 12 of the Civil Service Act states that "[c]hanges in the salary schedule of one class or a number of classes less than all may . . . be made by . . . resolution of a governing body." It is undisputed that the City Council is the "governing body" contemplated by § 12. Simply stated, the text of the Mayor-Council Act negates any notion that the legislature intended to repeal § 12 as it relates to the City Council's role in initiating a salary increase, at least to the extent that it does not conflict with § 5.09 and the normalbudgetary process.
That budgetary process begins when the mayor, not "later than May 20 of the [current budget year]," "submit[s] to the council" a proposed budget for the ensuing budget year. § 5.02, Mayor-Council Act. Although § 5.09 of the Mayor-Council Act prevents the council from "insert[ing] new items of expenditures . . . in the general fund budget. . . . without a public hearing on such increase," it does so only within the time frame set forth in the normal budgetary process, that is, the process begun pursuant to § 5.02. The Mayor-Council Act does not contain a provision stating that the council may not introduce a salary resolution in the current budget year to take effect in the ensuing budget year, months before commencement of the procedures outlined in §§ 5.02 and 5.09, and we may not add such a provision under the guise of statutory construction. Parker v. Hilliard,567 So.2d 1343, 1346 (Ala. 1990) ("Courts are supposed to interpret statutes, not to amend or repeal them under the guise of judicial interpretation."). Instead, the Mayor-Council Act refers to the Civil Service Act, which states that the City Council may make "[c]hanges in the salary schedule of one class or a number of classes less than all" by filing a certified copy of such resolution with the Board, which automatically becomes "valid and operative according to its terms" unless disapproved by the Board within 30 days. The resolution was passed and amended in September 2006 and December 2006, respectively, of the 2007 budget year, and was to take effect in the 2008 budget year, which would not begin until July 1, 2007. See § 5.01, Mayor-Council Act. The resolution was adopted clearly outside the time frame for the operation of the normal budgetary process contained in the Mayor-Council Act.
Construing the Mayor-Council Act and the Civil Service Act as contemplating more than one method by which the City *Page 1108 
Council can initiate a salary increase does not present an irreconcilable conflict. The Civil Service Act contains no timing provisions relating to the council's power to initiate a change in salary schedules, and the only timing provisions in the Mayor-Council Act relate to the normal budgetary process, which was unaffected by the resolution. Thus, the qualifications of the mayor's power by reference to the Civil Service Act are not inconsistent with the mayor's responsibility for the proper administration of the city's affairs, at least insofar as the council's action does not interfere with the normal budgetary process.
In short, Mayor Kincaid's authority over the salaries and compensation of the civil-service employees granted in § 4.06(8) of the Mayor-Council Act is qualified by § 12 of the Civil Service Act.[1] This qualification stands in stark contrast to the authority over the salaries of employees described in § 4.06(9), who are expressly excluded from the Civil Service Act. In § 4.06(9), the legislature authorized the mayor to "[e]mploy as members of his staff such employees as the mayor may deem necessary," and at "such compensationas the mayor may set." (Emphasis added.) Thus, the legislature knew how to grant unqualified mayoral authority over salaries and compensation for certain employees. It clearly did so in § 4.06(9), and just as clearly did not do so in § 4.06(8).
In conclusion, the trial court erred in holding the resolution void and unenforceable.[2] For these reasons, the summary judgment in favor of Mayor Kincaid is reversed, and the case is remanded for the entry of a judgment in favor of the City and the employees.
1061154 — REVERSED AND REMANDED.
1061184 — REVERSED AND REMANDED.
COBB, C.J., and SEE, SMITH, and PARKER, JJ., concur.
[1] This case involves no issue regarding theprocedural sufficiency of the enactment process of the Mayor-Council Act and of the Civil Service Act.
[2] This case does not involve § 3.08 of the Mayor-Council Act, which prohibits the City Council from "tak[ing] part in the appointment or removal of . . . employees." Nor does it involve § 4.06(2), which invests Mayor Kincaid with the authority to "[a]ppoint and . . . remove . . . employees of the city." In other words, this case does not implicate Mayor Kincaid's appointment authority; it is about setting salaries, not about making appointments.