WISE, Justice.
 
 [1]
 

 The plaintiffs, Leroy Bandy and David Russell, appeal from a summary judgment entered by the Jefferson Circuit Court in favor of the City of Birmingham (“the City”). We affirm.
 

 
 *1235
 

 Facts and Procedural History
 

 In 2009, the Birmingham City Council adopted Ordinance No. 09-36, which changed the dates of the general and runoff elections for the mayor, the city council, and the city board of education from the second Tuesday in October and the third Tuesday thereafter to the fourth Tuesday in August and the sixth Tuesday thereafter. Bandy and Russell were candidates in the first general election held after the adoption of Ordinance No. 09-36. Bandy was in a runoff against incumbent Roderick Royal for a city council seat and lost to Royal in the runoff election.
 

 On November 24, 2009, Bandy and Russell (“the plaintiffs”) filed in the Jefferson Circuit Court a “Verified Complaint for Injunctive Relief,” challenging the results of the 2009 Birmingham City Council and Birmingham Board of Education elections on the basis that, by adopting Ordinance No. 09-36, the City allegedly had unilaterally changed the Mayor-Council Act of 1955, Act. No. 452, Ala. Acts 1955, without petitioning the Alabama Legislature to amend the Mayor-Council Act. The plaintiffs also sought injunctive relief to prevent the swearing in of the newly elected Birmingham City Council members. The trial court ordered a hearing on the request for a preliminary injunction on December 11, 2009. The City then filed a motion to dismiss or for a summary judgment; the parties submitted a joint stipulation of facts; and the plaintiffs filed a motion for a summary judgment.
 

 The parties agreed that the facts were not in dispute and that the only question for the trial court was the application of the law to the facts. Counsel for the plaintiffs prepared the following “Plaintiffs’ Statement of Undisputed Material Facts” for the trial court:
 
 [2]
 

 “(1) The Alabama Mayor-Council Act, Act No. 55-452, was approved by the Alabama legislature on September 9, 1955....
 

 “(2) On September 6, 1961, the Alabama legislature adopted Act No. 61-663.... This Act sets forth the requirements for municipal election laws.... These provisions are now codified in Article 2, Chapter 46 of Title 11, Ala.Code, 1975. Class 1 municipalities are excluded from the provisions of that Act.
 
 (See
 
 § 11-46-20, Ala.Code, 1975).
 

 “(3) As of 1963, the citizens of Birmingham adopted the Mayor-Council form of government.... The first city council and mayor are elected thereafter. ...
 

 “(4) The City of Birmingham has more than 300,000 inhabitants as of the 1970 Federal decennial census. Birmingham therefore is classified as a Class 1 municipality. Birmingham remains a Class 1 municipality today....
 

 “(5) In March 1980, the Alabama legislature approves Act No. 80-94.... This Act amends various provisions of the Code of Alabama ‘so as to change and set new dates for municipal elections conducted under the provisions of Article 2, Chapter 46 of Title 11, Code of Alabama, 1975.... ’ ....
 

 “(6) On April 18, 1980, the Alabama legislature approved Act No. 80-243.... Act. No. 80-243 is codified at § 11-46-5, in Article 1, Chapter 46 of Title 11, Ala.Code, 1975....
 

 “(7) In 1982, the Alabama legislature approved Act No. 82-458.... Act No.
 
 *1236
 
 82-458 amended Ala.Code § 11-46-20_ Act No. 82-458 provided ‘General and special elections in cities and towns of this state, in all municipalities except Class 1 municipalities and except cities and towns organized under a commission form of government, shall be held and conducted at the times and in the manner prescribed in this article.... ’ ....
 

 “(8) In 1985, the Alabama legislature approved Act No. 85-919 amending the Mayor-Council Act, Act No. 55-452 including Sections 3.01 and 4.01 pertaining to times of elections and date of taking office for council and mayor. Specifically, Section 3.01 was amended to provide that the regular election of council members be held on the second Tuesday in October with any runoff election to be on the third Tuesday thereafter....
 

 “(9) On June 16, 1987, the Alabama legislature approved Act No. 87-191. This Act allowed for a change to single-member districts. The Act did not amend Title 11 of the Alabama Code 1975....
 

 “(10) On May 25, 1993, the Alabama legislature adopted Act No. 93-760. This Act amended § 11-46-5 to allow other municipalities, other than Class 3 municipalities, to change their elections dates to the dates provided in Article 2 Chapter 46 of Title 11, Ala.Code, 1975.... This Act did not remove the exclusion of Class 1 municipalities in § 11-46-20.
 

 “(11) On April 13, 2006, the Alabama legislature approved Act No. 2006-354, amending various sections of Title 11 and of Title 17, Ala. Code, 1975, pertaining to elections. Specifically, this Act amended § 11-46-21, providing for regular municipal elections on the fourth Tuesday in August 1984, and quadrennially thereafter, and runoff elections on the sixth Tuesday thereafter.... This Act did not remove the exclusion of Class 1 municipalities in § 11-46-20.
 

 [[Image here]]
 

 “(13) On February 17, 2009, the Birmingham City Council discussed the proposed election date change during Mayor’s report to Council at the regular Birmingham City Council meeting....
 

 “(14) On February 19, 2009, the proposed election date change discussed at City Council Committee of the whole meeting....
 

 “(15) On February 24, 2009, the Birmingham City Council adopted Ord. No. 09-36, changing the time of holding regular and runoff municipal elections for mayor, council and school board to August 25 and October 6, respectively....
 

 “(16) On March 3, 2009, the Mayor of Birmingham signed Ord. No. 09-36 into law....
 

 “(17) On March 10, 2009, Ord. No. 09-36 was published....
 

 “(18) On June 23, 2009, the City of Birmingham Election Commission met and called for the Birmingham City Council and Board of Education elections to be held on August 25, 2009, with any runoff to be held on October 6, 2009, pursuant to Ord. No. 09-36....
 

 “(19) On June 25, 2009, the Notice of Election published in The Birmingham News....
 

 “(20) On August 5, 2009, the Jefferson County Probate Judge certified names of duly qualified candidates for City of Birmingham City Council and Board of Education elections to Birmingham City Clerk; Leroy Bandy and David Russell included as qualified candidates for the District Nine Birmingham City Council seat....
 

 “(21) On August 25, 2009, the City of Birmingham conducted the general elec
 
 *1237
 
 tions for the Birmingham City Council and Board of Education. When no candidate received a majority of the votes cast in the District Nine Birmingham City Council race, a runoff election was declared between Plaintiff Leroy Bandy (‘Bandy1) and the incumbent councilor, Roderick Royal (‘Royal’). Runoff elections were also required in certain other council districts....
 

 “(22) On October 6, 2009, the City of Birmingham held runoff elections, including the runoff for the District Nine Birmingham City Council seat involving Bandy and Royal. Royal was declared the winner of the October 6, 2009 runoff election....
 

 “(28) On November 24, 2009, the City of Birmingham swore in the winners of the October 6, 2009 election on the fourth Tuesday in November following the election, as provided by the Mayor-Council Act and Ordinances No. 89-46 and [No.] 09-86_
 

 “(24) On November 24, 2009, Bandy and Royal filed their Verified Complaint and Motion for Temporary Restraining Order seeking preliminary and permanent injunctive relief to prevent the swearing-in of the elected Birmingham City Council members....
 

 “(25) On November 24, 2009, the Court found the motion for temporary restraining order moot, but ordered a preliminary injunction hearing on December 11, 2009....
 

 “(26) On December 9, 2009, the City of Birmingham filed its Motion to Dismiss/Motion for Summary Judgment. ...
 

 “(27) On January 12, 2010, the Alabama Legislative Reference opined that § 11-46-5 does not apply to the City of Birmingham as a Class 1 municipality. Specifically, the Alabama Legislative Reference stated that § 11-46-21 expressly excludes Class 1 municipalities from the election provisions, such as § 11-46-5, of Article 2, Chapter 46 of Title 11 of the Code of Alabama 1975....
 

 “(28) On February 5, 2010, the Court orders a status conference....
 

 “(29) On February 26, 2010, the Court held a Status Conference between the parties, wherein it was agreed that the only issue presented is a matter of law. The Court set forth the following dates: March 12, 2010 the parties must submit stipulations of fact; March 19, 2010 the Plaintiffs must submit their response to Motion to Dismiss and/or Motion for Summary Judgment; and March 29, 2010 the City of Birmingham must Reply and Respond to Plaintiffs’ Response and/or Motion....
 

 “(30) From its adoption of the Mayor-Council form of government, for at least the past twenty-five years and in all elections held before 2009, Defendant conducted its City Council elections on the Second Tuesday in October.”
 

 Ordinance No. 09-36 provides as follows: “WHEREAS, times for holding regular and runoff elections and for taking office for the offices of mayor and city council for the City of Birmingham are provided in the Mayor-Council Act, Ala. Acts, 1955, Act No. 452, as amended, Sections 3.01 and 4.01, as amended; and,
 

 “WHEREAS, times for holding regular and runoff elections and for taking office by city council members elected by single-member district are further provided by City of Birmingham Ordinance No. 89-416, codified at Sec. 2-2-51, et seq. of the General City Code of the City of Birmingham, 1980, pursuant to Ala. Code, 1975, § 11-43-63; and,
 

 “WHEREAS, Ordinance No. 02-14 provides that the regular elections for the
 
 *1238
 
 city board of education shall be elected at the regular municipal general election and any subsequent run-off election and assume office at the same time as the city council; and
 

 “WHEREAS, provisions of Alabama Acts No. 2006-354 and No. 2006-570 were enacted to comply with the Help America Vote Act of 2002, Public Law 107-252, including mandated provisional voting in federal, state and local elections; and,
 

 “WHEREAS, Alabama Act No. 2006-354 adopted new requirements for absentee balloting and provisional ballots, including a new schedule for elections providing for six weeks between a regular election and any necessary runoff election for municipalities other than Class 1 municipalities, and providing that provisional ballots be tabulated seven days after an election; and
 

 “WHEREAS, the times for holding elections for Defendant, a Class 1 municipality, pursuant to the Mayor-Council Act and Sec. 2-2-52 of the General City Code provide only a three-week period between a regular election and any necessary runoff election and was not changed by the enactment of Alabama No. 2006-354; and
 

 “WHEREAS, three weeks between regular and run-off elections allows insufficient time for absentee balloting according to the new laws, due to an additional week between an election and the tabulation of provisional ballots; and,
 

 “WHEREAS, Ala.Code, 1975, Section 11-46-5 provides that a municipality having election dates required by general or local act at a time different from the dates now or hereafter provided by Article 2, Chapter 46 of Title 11, may elect by ordinance to have the election at the same time required by Article 2, provided that the election made by ordinance does not have the effect of changing the beginning of a term or the time for taking office;
 

 “WHEREAS, it is imperative that the City of Birmingham have sufficient time between a regular election and any necessary runoff election to comply with state and federal requirements for provisional and absentee voting and provide ample time for the full consideration of all legally cast votes.
 

 “NOW, THEREFORE, BE IT ORDAINED, that the dates for elections for the offices of mayor, city council and board of education shall be changed by adopting the dates now or hereafter provided by the Code of Alabama, 1975, Article 2, Chapter 46 of Title 11, to provide for greater time between a regular election and any following runoff election to comply with state and federal requirements regarding absentee and provisional balloting and provide adequate time for absentee voters in run-off elections as follows:
 

 “Section 1.
 

 “Commencing with the city council election in 2009, the regular election for members of the city council shall be held on the fourth Tuesday in August, and quadrennially thereafter, and, when necessary as provided by the General City Code of the City of Birmingham, 1980 (GCC), Sec. 2-2-52, a second or runoff election shall be held on the sixth Tuesday next thereafter following the regular election. The term of office for the council members so elected shall commence on the fourth Tuesday in November following their election, as provided by GCC Sec. 2-2-53 and Sec. 3.01, Ala. Acts, 1955, Act No. 452, as amended. “Section 2.
 

 “Commencing with the mayoral election in 2011, the regular election for mayor shall be held on the fourth Tues
 
 *1239
 
 day in August, and quadrennially thereafter, and, when necessary as provided by Sec. 4.01, Ala. Acts, 1955, Act No. 452, as amended, a second or runoff election shall be held on the sixth Tuesday next thereafter following the regular election. The mayor so elected shall, on or before the fourth Tuesday of November of the year of such election, qualify by making oath that he is eligible for said office and will execute the duties of same according to the best of his knowledge and ability.
 

 “Section 3.
 

 “Commencing with the 2009 regular general municipal election, this ordinance shall also apply to elections for school board members elected by district pursuant to Ordinance No. 02-14. Such school board members shall be elected at the regular general municipal election and any subsequent run-off election, if necessary as provided in Ordinance No. 02-14, § 1, in the same manner, assume office at the same time, and serve the same term of office as the members of the Birmingham City Council as provided by § 1 of this ordinance. “Section 4. All ordinances or parts of ordinances heretofore adopted by the Council of the City of Birmingham regarding the times at which elections are to be held which are inconsistent with the provisions of this ordinance are hereby repealed.
 

 “Section 5. If any section, sentence, clause or phrase of this ordinance is for any reason held to be invalid or unconstitutional by declaration of any court of competent jurisdiction, such declaration shall not affect the validity of the remaining portions of this ordinance.
 

 “Section 6. This ordinance shall become effective upon publication as required by law. This ordinance shall not be enforced until it is precleared pursuant to Section 5 of the Voting Rights Act, 42 U.S.C. § 1973c.”
 

 On April 23, 2010, the trial court conducted a hearing on the parties’ summary-judgment motions. After the hearing, the trial court entered the following order:
 

 “This action commenced when the plaintiffs filed suit seeking to enjoin the individuals chosen as members of the Birmingham City Council in the election occurring on August 25, 2009 (and the subsequent run-off on October 6, 2009) from assuming office. Their bid for a preliminary injunction failed when the new council was sworn in before their motion could be considered. The action then turned to whether the election is to be voided as contrary to state law.
 

 “This matter is before the Court on the parties’ cross motions for summary judgment. The question presented by these motions is whether the City of Birmingham had the authority under Ala.Code 1975, §§ 11-46-5 and 11-46-21, to adopt an ordinance changing the date of its city council election. Because no material facts are in dispute, the issue is purely one of statutory interpretation and summary judgment may therefore be properly considered.
 

 “The plaintiffs contend that any change in the municipal election date must come from legislation to amend the Mayor-Council Act — an ordinance passed by the City Council in February 2009 cannot legally effectuate such a change. In response, the defendant argues that Ala.Code 1975, § 11-46-5, provides the Council with the authority to do so.
 

 “This Court recognizes that ‘[i]n determining the meaning of a statute this Court looks to the plain meaning of the words as written by the legislature.’
 
 Tolar Constr., LLC v. Kean Elec. Co.,
 
 944 So.2d 138, 149 (Ala.2006). Further,
 

 
 *1240
 
 multiple statutes ‘should be construed in harmony with other statutes in effect, so far as is practical.’
 
 Siegelmcm v. Folmar,
 
 432 So.2d 1246, 1249 (Ala.1983).
 

 “Ala.Code 1975, § 11-46-5(a), provides the following:
 

 “ ‘The governing body of a municipality having a general municipal election or runoff election required by general or local act at a time different from the dates now or hereafter provided by Article 2, Chapter 46 of Title 11, may elect by ordinance to have the election at the same time required by Article 2.... ’
 

 “Elections in the City of Birmingham have historically been governed by the Mayor-Council Act.
 

 “The analysis then turns to Ala.Code 1975, § 11-46-21. Found in Article 2 of Title 11, chapter 46, this statute specifies the time for municipal elections:
 

 “‘(a) The regular municipal elections in cities and towns shall be held on the fourth Tuesday in August 1984, and quadrennially thereafter, and, when necessary as provided in subsection (d) of Section 11-46-55, a second or runoff election shall be held on the sixth Tuesday next thereafter following the regular election.’
 

 “If the analysis were limited to these two statutes, there would clearly be no problem with changing the date of Birmingham council elections by local ordinance.
 

 “The plaintiffs, however, base their case on Ala.Code 1975, § 11-46-20, which has historically carved out Birmingham (a Class 1 municipality) from the scope of Article 2’s requirements:
 

 “ ‘General and special elections in cities and towns of this state, in all municipalities
 
 except Class 1 municipalities
 
 and except cities and towns organized under a commission form of government, shall be held and conducted at the times and in the manner prescribed in this article, and the expenses and costs incident to the conduct of all such elections shall be paid out of the treasury of the city or town holding the election.’
 

 “(Emphasis added).
 

 “Considering the interplay of these statutes requires some review of statutory history. Ala.Code 1975, § 11-46-5, originally applied to only Class 3 municipalities. The statute was amended in 1993 to delete this qualifying language. Now, the statute contains no explicit limitation of its applicability. The plaintiffs would have this Court fashion an implicit exclusion pertaining to the City of Birmingham.
 

 “Ala.Code 1975, § 11-46-20, had been law for several years when the Legislature amended § 11-46-5 to delete its applicability to only Class 3 municipalities. It must be presumed that in amending § 11-46-5, and thereby broadening its scope, the Legislature knew of § 11^46-20, so that § 11-46-5 does serve to amend the effect of § 11-46-20 with specific regard to the timing of elections. There is still a wide field of operation for § 11-46-20, however. It deals with not only the timing of elections but also the manner in which such elections are held. Indeed, a review of Article 2 shows that most of the statutes therein address election procedures. It may be said that such statutes still do not apply to the City of Birmingham under § 11-46-20.
 

 “Under plaintiffs’ interpretation of § 11-46-20, Ala.Code 1975, § 11-46-5(a), would apply to municipalities other than Birmingham and any municipalities under a commission form of government (which municipalities are governed by Article 3 of Title 11, chapter 46). In
 
 *1241
 
 other words, it would apply only to municipalities already covered by Article 2. The problem is that Ala.Code 1975, 11-46-74, enacted in 1987, already gives to Article 2 municipalities the authority to switch over to the timetable dictated by Ala.Code 1975, § 11-46-21.
 

 “This Court must presume that the Legislature ‘intended a just and reasonable construction and did not enact a statute that has no practical meaning,’
 
 Weathers v. City of Oxford,
 
 895 So.2d 305, 309 (Ala.Civ.App.2004), citing
 
 Ex parte Watley,
 
 708 So.2d 890 (Ala.1997), and
 
 Ex parte Meeks,
 
 682 So.2d 423 (Ala.1996). Given § 11-46-74, there would be no reason for amending § 11-46-5 in 1993 other than to broaden its effect beyond Article 2 municipalities.
 

 “The plaintiffs also insist that if the City of Birmingham changes its election dates as authorized by § 11-46-5, it must also change the year of the election to comport with § 11-46-21, which would result in a violation of the language in § 11^6-5 providing that ‘the election made by ordinance shall not have the effect of changing the beginning of a term of office or the time for taking office.’ This Court disagrees based on
 
 Siegelman v. Folmar,
 
 432 So.2d 1246, 1250 (Ala.1983).
 

 “The Alabama Supreme Court has before said that ‘[o]nce a general election has taken place and the people have cast their votes, there must be a compelling reason before the courts will void that election.’
 
 Godfrey v. Oswalt,
 
 428 So.2d 40, 43 (Ala.1983). The plaintiffs have failed to make such a showing; to the contrary, the above analysis leads to the conclusion that the Birmingham City Council had the authority to change the election date in 2009.
 

 “The plaintiffs’ motion for summary judgment is denied, and the defendant’s motion is granted.”
 

 This appeal followed.
 

 Standard of Review
 

 The question in this case is whether the City had the authority to change the dates for the general municipal election and any runoff election by ordinance rather than by petitioning the legislature to amend the Mayor-Council Act. The determinative facts in this case are essentially undisputed.
 

 “An order granting or denying a summary judgment is reviewed de novo, applying the same standard as the trial court applied.
 
 American Gen. Life & Accident Ins. Co. v. Underwood,
 
 886 So.2d 807, 811 (Ala.2004). In addition, ‘[t]his court reviews de novo a trial court’s interpretation of a statute, because only a question of law is presented.’
 
 Scott Bridge Co. v. Wright,
 
 883 So.2d 1221, 1223 (Ala.2003). Where, as here, the facts of a case are essentially undisputed, this Court must determine whether the trial court misapplied the law to the undisputed facts, applying a de novo standard of review.
 
 Carter v. City of Haleyville,
 
 669 So.2d 812, 815 (Ala.1995). Here, in reviewing the [entry] of a summary judgment when the facts are undisputed, we review de novo the trial court’s interpretation of statutory language and our previous caselaw on a controlling question of law.”
 

 Continental Nat’l Indem. Co. v. Fields,
 
 926 So.2d 1033, 1034-35 (Ala.2005). “Because the facts are not in dispute and because we are presented with pure questions of law, the trial court’s judgment is accorded no presumption of correctness.”
 
 Lyons v. Norris,
 
 829 So.2d 748, 750 (Ala.2002).
 

 
 *1242
 

 Discussion
 

 The plaintiffs argue that the trial court erred when it concluded that the City, a Class 1 municipality, had the authority, pursuant to § 11^16-5, Ala.Code 1975, to change by ordinance its general- and runoff-election dates from the dates set in the Mayor-Council Act to the dates set forth in § 11-46-21, Ala.Code 1975.
 

 “All legislative powers and other powers granted to cities and towns shall be exercised by the council, except those powers conferred on some officers by law or ordinance. The council shall perform the duties required by this title and other applicable provisions of law.”
 

 § 11-43-43, Ala.Code 1975. Also, § 11-45-1, Ala.Code 1975, provides that
 

 “[m]unicipal corporations may from time to time adopt ordinances and resolutions not inconsistent with the laws of the state to carry into effect or discharge the powers and duties conferred by the applicable provisions of this title and any other applicable provisions of law and to provide for the safety, preserve the health, promote the prosperity, and improve the morals, order, comfort, and convenience of the inhabitants of the municipality, and may enforce obedience to such ordinances.”
 

 Thus, a city council is free to adopt ordinances to the extent that those ordinances are not inconsistent with existing law.
 

 As is set forth above, the most recent amendment to the Mayor-Council Act in 1985 provided that the general elections of municipal council members would be held on the second Tuesday in October and that any runoff elections would be held on the third Tuesday thereafter. With regard to municipal elections, § 11-46-5, Ala.Code 1975, which was last amended in 1993, provides:
 

 “The governing body of a municipality having a general municipal election or runoff election required by general or local act at a time different from the dates now or hereafter provided by Article 2, Chapter 46 of Title 11, may elect by ordinance to have the election at the same time required by Article 2 and the election made by ordinance shall not have the effect of changing the beginning of a term of office or the time for taking office.”
 

 Therefore, we must determine whether the City was bound by the Mayor-Council Act or by § 11-46-5 with regard to the dates for holding its municipal elections.
 

 “[W]e are guided by well-established principles of statutory construction. First and foremost, ‘[m]atters of policy are for the Legislature and, whether wise or unwise, legislative policies are of no concern to the courts.’
 
 Marsh v. Green,
 
 782 So.2d 223, 231 (Ala.2000). ‘[I]t is not the duty of this Court to question the wisdom, or the lack thereof, used by the Legislature in enacting the laws of this State.’
 
 Ex parte T.D.T.,
 
 745 So.2d 899, 904 (Ala.1999). ‘[T]his Court is not at liberty to rewrite [a] statute or to substitute its judgment for that of the legislature.’
 
 Gowens v. Tys. S.,
 
 948 So.2d 513, 522 n. 1 (Ala.2006); see also
 
 Ex parte Carlton,
 
 867 So.2d 332, 338 (Ala.2003).
 

 “ ‘[Statutes must be construed
 
 in pari materia
 
 in light of their application to the same general subject matter.... Our obligation is to construe [the] provisions “in favor of each other to form one harmonious plan,” if it is possible to do so.’
 
 Opinion of the Justices No. 334,
 
 599 So.2d 1166, 1168 (Ala.1992) (quoting
 
 Ex parte Coffee County Comm’n,
 
 583 So.2d 985, 988 (Ala.1991)). Because our review turns on statutory construction, that review is
 
 de novo. Scott Bridge Co.
 
 
 *1243
 

 v. Wright,
 
 883 So.2d 1221, 1223 (Ala.2003).”
 

 Willis v. Kincaid,
 
 983 So.2d 1100, 1102-03 (Ala.2007).
 

 This Court addressed a similar factual situation and legal question in
 
 City of Birmingham v. Graffeo,
 
 551 So.2d 357 (Ala.1989). In
 
 Graffeo,
 
 the City of Birmingham had, before 1989, elected city council members according to the provisions of the Mayor-Council Act, which “established a system for election of nine at-large city council members with a staggered election system.”
 
 Graffeo,
 
 551 So.2d at 358. In 1987, the Alabama Legislature adopted § 11-43-63, Ala.Code 1975, “which authorized municipalities to establish single-member districts for the election of council members.”
 
 Id.
 
 In March 1989, pursuant to § 11-43-63, the mayor of the City proposed Ordinance No. 89-46, which provided for single-member districts for the election of city council members. The city council adopted Ordinance No. 89-46, the City obtained preclearance from the United States Justice Department, and the City prepared to implement the new system for the election of city council members.
 

 Before the elections were held, Graffeo filed a complaint seeking, among other things, injunctive relief. After a trial on the merits, the trial court granted the relief Graffeo requested, and the City appealed. This Court reversed the trial court’s judgment, reasoning as follows:
 

 “The City argues that the trial court erred when it held that § ll-43-63[, Ala.Code 1975,] did not amend the May- or-Council Act, and that the trial court erred when it held that the provisions of the Mayor-Council Act were specific provisions that controlled the general provisions of § 11-43-63. If, as the City argues, § 11-43-63 amended the May- or-Council Act, then the trial court’s ruling concerning whether the provisions of the two acts were specific or general was error, because those provisions that the trial court relied on will have been amended.
 

 “The Mayor-Council Act, Ala. Acts 1955, No. 452 authorized the City to establish the office of at-large council members. That office was not established until the City voted to change the form of government.
 
 Connor v. State,
 
 275 Ala. 230, 153 So.2d 787 (1963);
 
 Reid v. City of Birmingham,
 
 274 Ala. 629, 150 So.2d 735 (1963). The office of at-large council members resulted, accordingly, from the City’s exercise of the option given the City by the legislature to create the office.
 

 “Thirty-two years after the Legislature passed the Mayor-Council Act, it passed § 11-43-63, which authorizes municipalities to establish single member districts for the election of council members. The legislature has the inherent power to prescribe, alter and change the form of municipal governments.
 
 Siegelman v. Folmar,
 
 432 So.2d 1246 (Ala.1983);
 
 Opinion of the Justices [No. 181
 
 ], 277 Ala. 630, 173 So.2d 793 (Ala.1965). A municipality may exercise those powers that are explicitly granted to it by the legislature, as well as those powers that are necessarily implied from an express grant of power.
 
 Spear v. Ward,
 
 199 Ala. 105, 74 So. 27 (1917). Section 11-43-63 grants municipalities the power to divide the municipality into single member districts upon a vote of the city council. Accordingly, § 11-43-63, on its face, allows the City to pass an ordinance such as Ordinance No.
 
 89-46,
 
 which changes the office of the city council from being elected at-large to being elected in single member districts.
 

 “The trial court’s holding was to the effect that § 3.10 of the Mayor-Council
 
 *1244
 
 Act was not amended by § 11-43-63 and that § 3.10 prohibits the City from using § 11-43-63 to enable it to sustain Ordinance No. 8£M6. Section 8.10 of the Mayor-Council Act provides:
 

 “ ‘Sec. 3.10. Creation of new departments or offices; change of duties. “‘The council by ordinance may create, change, and abolish offices, departments or agencies, other than the offices, departments and agencies established by this act. The council by ordinance may assign additional functions or duties to offices, departments or agencies established by this act, but may not discontinue or assign to any other office, department or agency any function or duty assigned by this act to a particular office, department or agency.’
 

 “Section 11-43-63 explicitly allows a city, by the vote of its city council, to change from the at-large election of city council members to election in single-member districts. That provision was enacted thirty-two years after § 3.10 of the Mayor-Council Act was enacted, which, to some extent, indicates that § 11 — 43-63 was intended to modify the provisions of § 3.10. Moreover, the trial court’s holding that 11-43-63 did not amend the Mayor-Council Act and, accordingly did not amend § 3.10, destroys, at a practical level, any possible effectiveness of § 11 — 43-63.
 

 “Using the trial court’s analysis, § 3.10 would forever be a bar to the City passing an ordinance pursuant to § 11-43-63. Why would the Legislature enact § 11-43-63, if it did not mean for the provision to have any effect? Even Graffeo himself concedes that if Ordinance No. 89-46 had been made effective for the 1991 city council elections, then he would have no basis to sustain an action to enjoin the effects of the ordinance. Accordingly, considering our entire discussion, we hold that the trial court erred when it held that § 11 — 43— 63 did not amend the Mayor-Council Act.”
 

 City of Birmingham v. Graffeo,
 
 551 So.2d at 360-61.
 

 Similarly, § 11 — 46-5 explicitly allows a municipality, by a vote of its governing body, to change the dates on which its general municipal elections and runoff elections are held, so long as the beginning of a term of office and the time for taking office are not changed.
 
 See Siegelman v. Folmar,
 
 432 So.2d 1246, 1250 (Ala.1983) (noting that, “[b]y its express terms, [the previous version of] § 11-46-5 allows any class 3 municipality having a mayor-council form of government and an election date different from the date specified by § 11-46-21 to elect by ordinance to advance its election date to the second Tuesday in July”). Section 11-46-5 was passed in 1980 and was amended in 1993, after the most recent amendment to the Mayor-Council Act pertaining to the City’s elections, to remove language that limited its application to Class 3 municipalities having a mayor-council form of government. Therefore, it appears that, by enacting and later amending § 11 — 46-5, the legislature gave municipalities the authority, pursuant to § 11-46-5, to choose to vary from the election dates established in the Mayor-Council Act.
 

 Before 2009, the City held its general municipal and runoff elections at a time different from the dates provided in Article 2, Chapter 46 of Title 11 — specifically, it held those elections on the dates set forth in the Mayor-Council Act. In 2009, the governing body of the City — the city council — elected, by adopting Ordinance No. 09-36, to hold the elections at the same time — the fourth Tuesday in August and the sixth Tuesday thereafter — re
 
 *1245
 
 quired by Article 2. The ordinance did not change the beginning of a term of office or the time for taking office. Thus, it appears that the City complied with the plain language of § 11-46-5 when, in 2009, it changed the dates for its general municipal elections and runoff elections.
 

 The plaintiffs note that § 11-46-20, Ala. Code 1975, specifically provides that the election dates set forth in Article 2 do not apply to Class 1 municipalities. Therefore, they argue that, because § 11-46-20 is a specific provision directly related to Class 1 municipalities, it takes precedence over § 11-46-5, which is a general provision related to “a municipality.” They also contend that § 11-46-5 originally applied only to Class 3 municipalities having a mayor-council form of government and that those restrictions were removed in 1993. However, the plaintiffs assert that, when it removed the phrase “any Class 3 municipality” from § 11-46-5, the legislature did not intend to remove its previous exclusion of Class 1 municipalities from the election-date provisions set forth in Article 2. Therefore, they conclude that the legislature intended to exclude Class 1 municipalities from the operation of § 11-46-5.
 

 The City argues that the language in § 11-46-5 is plain and unambiguous; that § 11-46-5 authorized it to change the dates of its general municipal elections and runoff elections to the dates provided in § 11-46-21, Ala.Code 1975; and that the only restriction in § 11-46-5 was that the City not change the term of office or the time of taking office. It also argues that, although § 11^46-5 originally applied only to Class 3 municipalities having a mayor-council form of government, it now applies to all municipalities, regardless of class or form of government. Finally, it argues:
 

 “[T]he title to Act No. 93-760 manifests clear intent:
 

 “ ‘To amend Sections 11-46-5, ... of the Code of Alabama, 1975, to authorize all municipalities having a general municipal election or run-off election required by general or local act at a time different from the dates now or hereafter provided by Article 2, Chapter 46, Title 11 of the Code of Alabama 1975, to elect by ordinance to have the election at the same time as required by Article 2.... ’ ”
 

 (City’s brief, at p. 26.)
 

 Title 11, Chapter 46 of the Code is divided into three Articles. Article 1 sets forth “General Provisions.” Article 2 addresses “Elections in Certain Cities or Towns Having Mayor-Council Form of Government.” Article 3 addresses “Elections in Certain Cities or Towns Having Commission Form of Government.” Section 11^46-5 is included in Article 1 of Title 11, Chapter 46; §§ 11^46-20 and 11-46-21 are included in Article 2. Section 11^46-21(a), Ala.Code 1975, provides:
 

 “The regular municipal elections in cities and towns shall be held on the fourth Tuesday in August 1984, and quadrennially thereafter, and, when necessary as provided in subsection (d) of Section 11-46-55, a second or runoff election shall be held on the sixth Tuesday next thereafter following the regular election.”
 

 Section ll-46-20(a), Ala.Code 1975, provides:
 

 “General and special elections in cities and towns of this state,
 
 in all municipalities except Class 1 municipalities and except cities and towns organized under a commission form of government,
 
 shall be held and conducted at the times and in the manner prescribed in this article, and the expenses and costs incident to the conduct of all such elec
 
 *1246
 
 tions shall be paid out of the treasury of the city or town holding the election.”
 

 (Emphasis added.)
 

 The plaintiffs correctly argue that § 11^=6 — 20(a) generally excludes Class 1 municipalities from the requirements of Article 2, including the requirements of § 11-46-21. Based on that exclusion, the plaintiffs would have this Court hold that § 11-46-20 is a specific provision that is directly related to Class 1 municipalities and that it therefore takes precedence over § 11-46-5, a general provision related to “a municipality.” However,
 

 “[t]he fundamental rule of statutory construction is to ascertain and give effect to the intent of the legislature in enacting the statute. Words used in a statute must be given them natural, plain, ordinary, and commonly understood meaning, and where plain language is used a court is bound to interpret that language to mean exactly what it says. If the language of the statute is unambiguous, then there is no room for judicial construction and the clearly expressed intent of the legislature must be given effect.”
 

 IMED Corp. v. Systems Eng’g Assocs. Corp.,
 
 602 So.2d 344, 846 (Ala.1992).
 

 Section 11-46-20 is written in mandatory language, but it excepts from its provisions “Class 1 municipalities and ... cities and towns organized under a commission form of government.” More particularly, it
 
 requires
 
 that general and special elections in cities and towns other than those excepted shall be conducted in accordance with the terms set forth in Article 2. Although § 11-46-20
 
 does not require
 
 that Class 1 municipalities such as the City conduct their elections in accordance with Article 2, it also
 
 does not prohibit
 
 Class 1 municipalities from choosing, if so authorized, to schedule elections in accordance with the dates set forth in Article 2.
 

 Furthermore, the plain language of § 11-46-5 provides that, if the general municipal elections and runoff elections of a municipality,
 
 without an exception for Class 1 municipalities,
 
 are required by a general or local act to be held at a different time than the time set forth in Article 2, the governing body of the municipality may elect, by ordinance, to have the elections at the time required by Article 2, so long as the ordinance does “not have the effect of changing the beginning of a term of office or the time for taking office.” As the City argues, the language used in § 11-46-5 is clear and unambiguous, and it does not specifically exclude Class 1 municipalities from its provisions. “ ‘[W]here plain language is used a court is bound to interpret that language to mean exactly what it says,’ and ... ‘[i]f the language of the statute is unambiguous, then there is no room for judicial construction and the clearly expressed intent of the legislature must be given effect.’ ”
 
 Ex parte Alabama Great Southern R.R.,
 
 788 So.2d 886, 889 (Ala.2000) (quoting
 
 Blue Cross & Blue Shield v. Nielsen,
 
 714 So.2d 293, 296 (Ala.1998)).
 

 Section 11-46-5 authorizes municipalities,
 
 without an exception for Class 1 municipalities,
 
 to choose to conduct their general municipal elections and runoff elections at the times set forth in Article 2. Also, although § 11-46-20 does not
 
 require
 
 Class 1 municipalities to conduct elections in accordance with Article 2, it does not
 
 prohibit
 
 them from choosing to do so in accordance with § 11-46-5. Therefore, we reject the plaintiffs’ argument that § 11^16-20, with its exclusion of Class 1 municipalities, is a more specific statute that takes precedence over the more general § 11-46-5.
 

 
 *1247
 
 The plaintiffs next argue that, even if § 11-46-5 applies, the City did not comply with the requirements of Article 2. Specifically, they contend that the fourth Tuesday in August 2009 was “not ‘qua-drennially1 after 1984,” as is required by § ll-46-21(a), Ala.Code 1975. Therefore, the plaintiffs argue:
 

 “[T]he elections provided by ... Ordinance No. 09-86 could not be at the same time as provided in Article 2 without affecting the term of the officeholders — to fully comply with the § 11-46-5 requirement that the change not affect the beginning of the terms of the officeholders, the terms of the city council members would have been cut short by over one year if the election had been held in 2008 and extended by three years if the election had been held in 2012.”
 

 (Plaintiffs’ brief, at p. 29.) They further argue that § 11 — 46—21(c), Ala.Code 1975, requires that municipal officers take office on the first Monday in November following their election, but that Ordinance No. 09-36 provides that the officers would take office on the fourth Tuesday in November, which was the date provided by the May- or-Council Act. For these reasons, the plaintiffs conclude that the City did not comply with the requirements of § 11 — 46— 5.
 

 Following the enactment of Ordinance No. 89-46, which is discussed in detail in
 
 Graffeo,
 
 supra, and starting in 1989, the City elected council members from single-member districts every four years. Pursuant to the Mayor-Council Act, the council members so elected have taken office on the fourth Tuesday in November following their election. Ordinance No. 09-36, in compliance with the plain language of § 11-46-5, did not change either the quadrennial year of the elections, and therefore the beginning of the term of office, or the time for taking office.
 

 The plaintiffs apparently read the phrase “the election made by ordinance shall not have the effect of changing the beginning of a term of office or the time for taking office” in § 11-46-5 to require that the elections be held in quadrennial years calculated from 1984 and that the time for taking office be the time set forth in § 11-46-21 (c), rather than the time set forth in the Mayor-Council Act. In contrast, the City argues that § 11-46-5 provides for the adoption of the days of the elections — the fourth Tuesday in August and the sixth Tuesday thereafter — set forth in § ll-46-21(a) but not the year— 1984 and quadrennially thereafter — set forth in § ll-46-21(a).
 

 “In interpreting statutes, the underlying consideration is to understand and effectuate the intent of the Legislature as expressed in the statutes.
 
 Employees’ Retirement System of Alabama v. Head,
 
 369 So.2d 1227 (Ala.1979);
 
 Champion v. McLean,
 
 266 Ala. 103, 95 So.2d 82 (1957).
 

 [[Image here]]
 

 “... [I]f possible, the legislative intent must be derived from the expression in the statute.
 
 Town of Loxley v. Rosinton Water, Sewer and Fire Protection Authority, Inc.,
 
 376 So.2d 705 (Ala.1979);
 
 Employees’ Retirement System of Alabama v. Head,
 
 369 So.2d 1227 (Ala.1979). Where more than one statute is involved, however, they should be construed in harmony with other statutes in effect, so far as is practical.
 
 Waters v. City of Birmingham,
 
 282 Ala. 104, 209 So.2d 388 (1968);
 
 State ex rel. Richardson v. Morrow,
 
 276 Ala. 385, 162 So.2d 480 (1964);
 
 Gulf States Steel Co. v. Justice,
 
 204 Ala. 577, 87 So. 211 (1920);
 
 B.F. Goodrich Co. v. Butler,
 
 56 Ala.App. 635, 324 So.2d 776,
 
 cert. quashed,
 
 295
 
 *1248
 
 Ala. 401, 324 So.2d 788 ([Ala.]1975). In construing a statute, the court must look not only to the language of the statute, however, but also to the purpose and object of the enactment, and its relation to other laws and conditions which may arise under its provisions.
 
 State ex rel. Richardson v. Morrow,
 
 supra.”
 

 Siegelman v. Folmar,
 
 432 So.2d at 1248-49.
 

 We agree with the City’s interpretation of § 11^46-5. Rather than requiring that the terms and times of taking office comply with § 11-46-21, it is more logical to conclude that the legislature intended to allow cities and towns to change the
 
 days
 
 of the general municipal elections and runoff elections, but to leave in place the
 
 years
 
 the elections would occur and the times the council members would take office.
 
 See Siegelman,
 
 432 So.2d at 1250 (“By its express terms, § 11-46-5 allows any ... municipality having a mayor-council form of government and an election date different from the date specified by § 11-46-21 to elect by ordinance to advance its election date to the second Tuesday in July. The Legislature, in passing [§ 11-46-5], apparently recognized that some municipalities have continued to conduct their elections at a date different from the date provided by § 11-46-21.”). Any other interpretation would run afoul of the plain-language qualification in § 11-46-5 that “the election made by ordinance shall not have the effect of changing the beginning of a term of office or the time for taking office.”
 
 See Siegelman,
 
 supra. Therefore, we reject the plaintiffs’ argument that the City did not comply with the requirements of § 11-46-5.
 

 Because we conclude that the August 25, 2009, and October 6, 2009, elections were not void, we need not address the plaintiffs’ argument that the trial court erred in not ordering new elections.
 

 Conclusion
 

 On February 24, 2009, pursuant to § 11-46-5, Ala.Code 1975, a majority of the city council voted to adopt Ordinance No. 09-36. After the United States Justice Department precleared the ordinance, the City implemented the new election dates. Elections were held pursuant to Ordinance No. 09-36 on August 25, 2009, and October 6, 2009. For the reasons set forth herein, we conclude that the City had the authority under § 11-46-5, Ala.Code 1975, to change by ordinance the days of the general municipal elections and runoff elections from the second Tuesday in October and the third Tuesday thereafter to the fourth Tuesday in August and the sixth Tuesday thereafter. Accordingly, the trial court properly entered a summary judgment for the City, and we affirm the trial court’s judgment.
 

 AFFIRMED.
 

 COBB, C.J., and WOODALL, STUART, BOLIN, PARKER, MURDOCK, SHAW, and MAIN, JJ., concur.
 

 [1]
 

 . This case was originally assigned to another Justice on this Court. It was reassigned to Justice Wise on January 26, 2011.
 

 [2]
 

 . Counsel for the City also prepared "Joint Stipulated Facts.” The "Joint Stipulated Facts” prepared by the City does not differ in any material respects from the "Plaintiffs' Statement of Undisputed Material Facts.”